Paul Campion, Appellee, v. Chicago Landscape Company, Appellant.

Gen. No. 39,671.

226

Opinion filed May 3, 1938.

ROBERTSON, CROWE and SPENCE, of Chicago, for appellant; BURT A. CROWE and EDMUND L. McGIBBON, of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Paul Campion, plaintiff, brought suit against Chicago Landscape Company for injuries sustained when

he was struck in the eye by a ball while playing golf on the Garfield Park course in Chicago, which at the time was being operated under a concession by defendant. The jury returned a verdict for $10,000, upon which judgment was entered. Defendant appeals.

The amended complaint charged that the accident was caused by the negligence of defendant in that it carelessly and negligently maintained the fairways of the sixth and seventh holes and laid them out and maintained the course so that players approaching the seventh green were unduly exposed to danger of being struck by balls driven with reasonable skill by other players from the sixth tee, and that defendant was careless and negligent in laying out and maintaining the sixth and seventh fairways in dangerous proximity to each other.

There is substantially no dispute as to the salient facts. Garfield Park in Chicago is under the jurisdiction of the West Park Commissioners, who had leased the nine-hole golf course to defendant May 13, 1933, for a period of one year. Although defendant had assumed the operation of the course, the upkeep thereof, such as the mowing of lawns and work of attending to the grounds, was retained by the West Park Commissioners. This course has been in existence for more than 25 years and was used for many years to play the Cook County Golf Association championships. During that time it has not been changed. The course consisting of nine holes having an aggregate length of 2,006 yards is laid out on a plot of ground about 30 acres in area. The terrain is practically level with shrubbery on some of the holes, mostly along the outer edge, and several wooded spots. Hole No. 6 runs north 283 yards and No. 7 runs back 291 yards in a slightly southwesterly direction. The accident occurred around noon Sunday, May 14, 1933, the day after defendant had taken over the concession. It was early in the season and the regular No. 7 green

was not in use, but instead a temporary green had been laid out approximately in front of the regular seventh green and about five yards to the left. The distance from the center of the temporary green to the sixth tee was approximately 50 yards.

Campion was an experienced golfer who had played for more than 15 years and maintained an average score of about 80. He had played various public courses in this district, at numerous country clubs around Chicago and on various courses in Minnesota and Wisconsin. Although he lived near Garfield Park all his life he had never played over this course until the day in question.

Many people were playing the course on the day of the accident. Plaintiff was paired up with his brother-in-law Edward Manahan. They had played and completed six holes and had driven from the seventh tee toward the green. The fairway on this hole was perfectly flat, with no bunkers, traps, mounds or trees. Four girls were playing ahead of plaintiff and as he stood on the seventh tee he had a clear view of the entire course. He drove down the seventh fairway, a distance of about 200 yards, to a point about 35 feet left of the normal center of the fairway. The average width of this fairway was about 40 or 45 yards and its course was slightly toward the southwest. After teeing off plaintiff and Manahan walked down the fairway and when plaintiff reached his ball he stood waiting for the foursome ahead to clear the seventh green. He testified: ''I did not notice anybody playing off the sixth tee. [Although the uncontroverted evidence is that there were players in this tee while plaintiff awaited his turn to shoot.] I was rather concerned with the fact that these fairways were rather narrow. I knew that. I also knew that there might be boys and girls playing around there that afternoon who weren't true and accurate drivers. I did not concern myself

with the question of whether or not somebody driving somewhere near me in an opposite direction might hit me. I did not pay any attention to that. While I was standing there I was facing in a southwesterly direction. I was not looking at anything in particular. I was waiting for the green to clear. The green was almost due south of where I was. At my left and over still south of me was the sixth tee that I had just previously played from. I didn't take any particular notice whether there was anybody on that tee driving or not. On a busy day like that there is always somebody on every tee. On a busy day when there are a lot of people playing I do not necessarily use more care in watching out for myself. I don't know that there is any reason why I should." While plaintiff was standing over his ball and waiting, one Smith and Harold Davis were driving from the sixth tee toward the sixth green. Smith hooked his ball so that it carried into the seventh fairway, where plaintiff stood, inflicting serious injury.

Defendant's motions for a directed verdict made at the close of plaintiff's case and again at the close of all the evidence were denied by the court and these rulings are assigned as error. The gist of the complaint is that it was negligence to lay out and maintain a golf course in such manner that there was a likelihood of injuring some person; that this course violated the well recognized rules of golf construction; and that the manner in which the 6th and 7th fairways were maintained was such that it must have been apparent to defendant that there was an undue hazard which should have been modified or eliminated.

As ground for reversal it is first urged that the proof fails to show defendant was guilty of the negligence charged in the complaint and that such alleged negligence as is charged was not the proximate cause of the accident; that the accident was due, not to the

condition or layout of the golf course, but rather to the fact of Smith's driving the golf ball from the sixth tee into the seventh fairway, where plaintiff was standing. The question whether the pleadings and facts establish a case of liability against the proprietor of a daily fee course presents a novel point of law in this State.

It is a fundamental principle in our law that negligence is a breach of duty and where there is no duty or breach there can be no negligence. (*Kreigh v. Westinghouse, Church, Kerr & Co.*, 152 Fed. 120.) As applicable to this rule of law defendant cites a group of cases which hold, under pertinent facts, that if an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause and refuse to trace it to that which was more remote. (Cooley on Torts, 3rd Ed., p. 99.) This principle was involved in *Seith v. Commonwealth Electric Co.*, 241 Ill. 252, where a live wire had fallen from the defendant's pole to the ground between the sidewalk and the curb. While there it was struck by a policeman with his club and accidentally thrown upon a person standing on the sidewalk. In holding that the negligent conduct of the defendant in so maintaining the wire that it could fall to the ground was not the proximate cause of the injury, the court said (p. 265): ''The injury to the plaintiff followed as a direct and immediate consequence of the independent act of the policeman, and but for such act any negligence of the defendant would have caused no injury to the plaintiff. . . . The negligence of the defendant produced a condition which made the injury possible, but the injury would not have occurred but for the independent act of the policeman.''

In *Crawford v. Central Illinois Public Service Co.*, 235 Ill. App. 339, the defendant was charged with negligence in setting a pole near to the curb line of a street. Plaintiff, in driving an automobile and endeavoring to avoid a collision in the street with another vehicle, ran over the curbing, struck the pole and was injured. The court pointed out that the three essential elements in actionable negligence are: (1) a duty imposed by law to exercise care in favor of the person for whose benefit the duty is imposed; (2) the failure to perform the duty; and (3) a consequent injury so connected with the failure to perform that duty that the failure is the proximate cause of the injury, and it was held (p. 342) : "If a defendant's negligence does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the two are not concurrent and the existence of the condition is not the proximate cause of the injury. The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and, if so, the connection is not broken; but if the act of the third person which is the immediate cause of the injury is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the first act or omission, the connection is broken and the first act or omission is not the proximate cause of the injury. *Seith v. Commonwealth Electric Co.*, 241 Ill. 252; *Jenkins v. LaSalle County Carbon Coal Co.*, 264 Ill. 238; *Hartnett v. Boston Store*, 265 Ill. 331."

In *Hartnett v. Boston Store*, 265 Ill. 331, the court said that what constitutes proximate cause has been defined in numerous decisions with practically no difference of opinion, and stated the rule as follows

(p. 334) : "The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which might result from his act."

In *Wolff Mfg. Co. v. Wilson,* 152 Ill. 9, a barber's post, insecurely fastened near the outer edge of a sidewalk, was thrown over by the driver of a team who backed his wagon into it, injuring plaintiff. The post, although not fastened, would not have caused the injury but for the act of the driver, and it was held that the intervening cause was the proximate cause of the injury.

In *Welsh v. John Griffiths & Son Co.,* 270 Ill. App. 624 (Abst.), defendant was about to erect a new post office in Chicago, and constructed a fence around the premises made of thin boards used for the purpose of shutting off the property. Defendant had advertised for help and several thousand men appeared the next morning seeking employment. Plaintiff had entered inside the fence and was waiting, and as the watchman came out of the power house the crowd moved forward in anticipation of securing employment, pushing over and breaking the fence and injuring plaintiff. It was argued that defendant in advertising for workmen during a period of depression should have foreseen that a crowd would gather and that its fence might be pushed down causing injury to someone. The court directed a verdict for defendant and the judgment was affirmed on the ground that neither the condition of the fence nor the huge crowd was the proximate cause of the injury, but rather that the proximate cause was the intervening independent act of some portion of the crowd in surging against the fence. In discussing this phase of the case the court said: "It has been

repeatedly held that if a defendant's negligence does nothing more than furnish a condition making the injury possible and injury follows by the subsequent independent acts of third persons which could not have been reasonably anticipated, the condition is not the proximate cause of the injury. [Citing numerous cases, including *Seith v. Commonwealth Electric Company* and *Hartnett v. Boston Store, supra.*] The test is whether the party guilty of the alleged negligence might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence.''

Another case cited by defendant is *Steenbock v. Omaha Country Club,* 110 Neb. 794, 195 N. W. 117. Plaintiff, acting as a caddy at defendant's club, was injured when an automobile driven by a member, Crowfoot, ran into a flagpole which defendant's employees had taken down for purposes of repair and laid across the club driveway. Plaintiff was sitting near one end of the flagpole, awaiting employment as a caddy. Crowfoot settled with plaintiff and the action proceeded against the country club, resulting in a verdict and judgment for plaintiff. In reversing this judgment for failure of the trial court to direct a verdict, the Supreme Court of Nebraska said that the controlling question at issue was whether the placing of the flagpole across the driveway of the country club or the knocking of the pole against plaintiff's back by Crowfoot was the proximate cause of the injury, and then affirmed the rule laid down by the decisions hereinbefore discussed as follows (p. 796): ''To constitute proximate cause, under authority of the adjudicated cases, the injury must be the natural and probable result of the negligence, and be of such character as an ordinarily prudent person could have known, or would or ought to have foreseen might probably occur as the result. It is not sufficient that the negligence charged

does nothing more than furnish a condition by which the injury is made possible, and if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. There may have been carelessness and negligence on the part of the country club in placing the flagpole across its driveway, but this, in itself, no matter how careless and negligent it might be, would not and could not alone cause the injury.''

These decisions enunciate the established rule in cases involving actionable negligence. Applying the rule to the case at bar it seems reasonably clear that Smith's act in driving the golf ball was the immediate cause of the injury to plaintiff, and that in the exercise of reasonable diligence defendant was not required to anticipate the consequences of Smith's drive. Employing the reasoning in *Steenbock v. Omaha Country Club, supra,* it may be said with equal force that the condition of the golf course might have existed for years without injury to anyone had it not been for the intervening independent act of Smith. As defendant's counsel points out, the question presented is not whether defendant should have foreseen that an accident might happen, but rather whether the condition of the course operated by defendant unreasonably subjected plaintiff to damages and hazards over and above those commonly inherent in the game of golf. Persons operating any golf course may reasonably expect that because of the somewhat dangerous nature of the game, accidents may occur at any time, but to subject them to liability for such an accident would make them insurers of all players on the course. This is not the law.

Plaintiff's counsel takes the position that to lay out a nine-hole course on 30 acres of ground is negligence *per se.* He bases this argument upon the evidence of

a recognized golf course architect who testified that considerably more acreage ought to be employed in laying out a nine-hole course so as to make the fairways wider and more amply protected by intervening shrubs, rough and spaces, and relies on quotations from various books and magazine articles, apparently not introduced in evidence, concurring in the opinion of the expert. The construction of the course is criticized because numerous fairways running parallel are played in opposite directions and because the fairways are narrow and not properly safeguarded. Plaintiff's own expert admitted, however, that he did not know of any golf course where at some place or other it would not be possible for some one to slice or hook his ball into another fairway, and it is a matter of common knowledge that on practically all golf courses, including those constructed on vast acreages where the fairways are wide and well separated by rough and shrubs, there are parallel holes, played in opposite directions, where a sliced or hooked ball may and frequently does go into another fairway. This is one of the incidents of all courses, with which golfers generally are familiar. The charge that defendant was negligent in maintaining the sixth and seventh fairways in such proximity to each other that a player on No. 7 fairway was unduly exposed to danger by a ball driven from No. 6 tee, does not constitute negligence *per se*. Plaintiff had played six holes, had an unobstructed view of the whole course, and as an experienced golfer was undoubtedly familiar with the dangers inherent in the game. He testified that he was "rather concerned with the fact that these fairways were rather narrow. I knew that. I also knew that there might be boys and girls playing around there that afternoon who weren't true and accurate drivers." If he had looked he would have seen the foursome driving off the sixth tee, but according to his own testimony, "I didn't pay any

attention to that.'' The language of the Scottish court in *Andrew v. Stevenson,* (1905), 13 Scot. L. T. 581, is particularly appropriate in this connection: ''The risks of accident in golf are such, whether from those playing behind or from those meeting the player on crossing his line of play, that in my opinion no one is entitled to take part in the game without paying any attention to what is going on around and near him, and that when he receives an injury which by a little care and diligence on his part might have been escaped, he should not be entitled to claim damages for that injury.''

Plaintiff's counsel cites and quotes from *Castle v. St. Augustine's Links, Ltd.,* 38 Times Law Reports 615, and characterize that decision as controlling. In that case the plaintiff, while driving a taxicab along a public highway running parallel and in close proximity to the 13th hole of the course, was struck by a ball hit from the tee. Notice of that danger had been brought home to the proprietor of the course, and the court held that the slicing of the ball into the road was not only a public danger but was the probable consequence of people driving from this particular tee. A similar result was reached in *Wills v. Wisconsin-Minnesota Light & Power Co.,* 187 Wis. 626, wherein defendant maintained an amusement park where it had permitted the playing of baseball. Plaintiff followed a highway which led from the entrance to the park and was struck by a foul ball from the batter at home plate and injured. Recovery was permitted upon the theory that it was defendant's duty to safeguard visitors to its park against dangers that might have been reasonably foreseen. This type of cases have no application to the case at bar, however, because recovery is always based on the theory of a public nuisance. In those cases the courts say that it is necessary for plaintiff to prove that defendant had knowledge, actual or con-

structive, of the inherent danger. In the case at bar defendant offered to prove that there had been no previous accidents on this course for the purpose of showing that it had no knowledge of inherent danger, but the court denied the offer, notwithstanding the settled rule that where the dangerousness of a condition or place is alleged to be the cause of the accident other accidents occurring at that place under substantially the same conditions may be shown for the purpose of proving defendant's knowledge of the danger, and the corrollary of this rule that proof of no other accidents may be shown for the purpose of showing defendant's lack of knowledge. (*Wolczek v. Public Service Co.*, 342 Ill. 482.)

Another class of cases cited and discussed by plaintiff are decisions dealing with injuries to spectators at baseball games. There are numerous such decisions in various jurisdictions and a well settled rule of law has been formulated by the courts. It is generally held that a proprietor of a baseball park, who for a consideration invites spectators to watch the games therein, is under a duty to screen in the dangerous part of the grandstand behind and near the home plate. If a patron chooses not to avail himself of the protected portion of the stand, but prefers to sit elsewhere so as to obtain a better view of the game, the proprietor is not liable if the patron is injured, and the patron is held to have assumed the risk of injury from a thrown or batted ball. (*Loring v. New Orleans Baseball & Amusement Co.*, 16 La. App. 95, 133 So. 408; *Crane v. Kansas City Baseball & Exhibition Co.*, 168 Mo. App. 301, 153 S. W. 1076; *Kavafian v. Seattle Baseball Club Ass'n*, 105 Wash. 215, 177 Pac. 776, 181 Pac. 679; *Wells v. Minneapolis B. & A. Ass'n*, 122 Minn. 327, 142 N. W. 706.) This rule has been held applicable even though at the time plaintiff entered the grandstand all the seats behind the screened portion were occupied.

(*Brisson v. Minneapolis B. & A. Ass'n,* 185 Minn. 507, 240 N. W. 903.)

Plaintiff contends, however, that under the decisions of this State the doctrine of assumed risk applies only to the relation of master and servant, and not in other cases. Much of the confusion arising in decisions where this doctrine was invoked appears to have arisen from the theory adopted by some authorities that this defense is merely an adaptation of the doctrine of contributory negligence as applicable to master and servant cases. Francis H. Bohlen, in "Studies in the Law of Torts" (20 Harvard Law Review, 14, 91), points out this confusion, and says that neither the maxim, *volenti non fit injuria,* as expressing the principle that one who has voluntarily encountered a known danger cannot recover from the creator thereof, nor the principle itself, is confined to cases of workmen against their employers, and "is not in any way founded upon anything peculiar to the relation of master and servant, nor based upon the contractual nature of the relation. It does not result from an implied term in a contract creating the relation; it applies equally to any relation voluntarily assumed—contractual or not." This position received judicial recognition in *Miner v. Conn. River R. Co.,* 153 Mass. 398, wherein the court said (pp. 402, 403) : "Independently of any relation of master and servant, there may be a voluntary assumption of the risk of a known danger, which will debar one from recovering compensation in case of injury to person or property therefrom, even though he was in the exercise of due care. In other words, it may be consistent with due care to incur a known danger voluntarily and deliberately; and this may be so when the danger arises from the known or apprehended neglect or carelessness of others. . . . But the principle that one may be debarred from a recovery when he voluntarily assumes

the risk is not identical with the principle on which the doctrine of contributory negligence rests, and in proper cases this ought to be explained to the jury.''

We are aware of the fact that there are cases in this State holding that the doctrine of assumption of risk is confined to situations where a contractual relationship exists, and in some instances it has been restricted to the relationship of master and servant, but current authority is otherwise. In *Murphy v. White City Amusement Co.*, 242 Ill. App. 56, plaintiff was injured while riding down ''The Chutes'' at White City in Chicago, which was characterized by the court as a simple amusement device with which plaintiff was familiar. The court propounded the inquiry whether plaintiff could maintain an action for an injury received while riding on ''The Chutes'' on the sole ground that it was dangerous to do so, and answered the inquiry by saying: ''The answer must be in the negative.'' In discussing the relationship between the parties, the court said (pp. 58, 59):

''While the relation between plaintiff and defendant may have been that of passenger and carrier, yet the relative duties of the parties depend upon the kind of carriage contracted for. Plaintiff knew that she was contracting for a swift ride down a steep incline in a boat which bounced violently when it struck the water at the bottom. Her contract of carriage was subject to the dangers incident to the experience. She testified that she took the ride to receive the thrill caused by such dangers. The factor of danger was one of the things she contracted for.

''In *Pointer v. Mountain Ry. Const. Co.*, 269 Mo. 104, where the passenger was injured upon a scenic railway, the court said that he 'knew he was making no contract for a Pullman car upon the level tracks of a steam railroad,' but contracted for the peculiar carriage offered.

"In *Carlin v. Krout,* 142 Md. 140, a passenger was injured while riding on the 'Ocean Wave.' . . . and it was held that the injuries were not caused by any breach of duty charged against the proprietor with reference to ordinary conditions represented or understood to be safe, 'but to those existing in an unusual device which was intended to be used only by persons who desired to assume the risks which its use clearly involved.' "

This decision is in accordance with the great weight of authority pertaining to injuries received while playing or watching such games as hockey, baseball, polo, etc. In *Ingersoll v. Onondaga Hockey Club,* 245 App. Div. 137, 281 N. Y. S. 505, it was held that a spectator at a hockey game could not recover for injuries sustained when struck by the puck, the court holding that plaintiff, in attending the hockey game, occupied precisely the same status as a spectator at a ball game, and the same rules should be applied in each instance. "There was no obligation on the part of respondents to protect appellant against a danger incident to the entertainment which any reasonable spectator could foresee and of which she took the risk." (Page 508.)

In *Rich v. Madison Square Garden Corp.,* 266 N. Y. Supp. 288, 149 Misc. 123, affirmed 241 App. Div. 722, 270 N. Y. Supp. 915, the court held that plaintiff, who was injured by a flying hockey stick, was not entitled to recover, on the ground that it was not foreseeable that the hockey stick would leave the player's hands and pass among the spectators, likewise concurring in the rule announced in the baseball cases.

In *Standard Oil Co. v. Titus,* 187 Ky. 560, it was held that the doctrine of assumed risk is not based entirely on contract, but grows out of the application of the maxim *"volenti non fit injuria,"* and that "it is well settled that independently of the relation of master and servant, there may be a voluntary assumption of

the risk of a known danger which will debar one from recovering compensation in case of injury, even though he was in the exercise of due care. [Citing *Miner v. Connecticut River R. Co.,* 153 Mass. 398, *supra,* and other cases.] Therefore the question is whether plaintiff, as a matter of law, voluntarily assumed the risk of a known danger.''

In *Andrews v. Stevenson,* 13 Scot. L. T. 581, hereinbefore discussed, the court, among other things, denied liability because of the doctrine of voluntary assumption of risk, and in *Benjamin v. Nernberg,* 102 Pa. Super. Ct. 471, 157 Atl. 10, recovery was denied on the same ground. In the latter case plaintiff was struck by a golf ball driven by defendant, and it was held that as a matter of law plaintiff had assumed the risk of injury resulting from his own participation in the game, the court saying: ''It is well known that not every shot played by a golfer goes to the point where he intends it to go. If such were the case, every player would be perfect and the whole pleasure of the sport would be lost. . . . The plaintiff himself had been playing golf for a period of about 20 years, and must therefore be held to be familiar with all the risks of the game. . . . This risk of golf players must accept.''

In *Schlenger v. Weinberg,* 107 N. J. L. 130, judgment of nonsuit was affirmed in a case where plaintiff, while playing golf, was struck and injured by a golf ball driven by an unnamed member of the club. Liability was sought to be attached to the proprietors of the course, but the court held that the evidence did not connect the corporate defendant with the transaction and said that ''mere ownership of a golf course does not impute liability for an injury suffered by another from a golf ball driven by a player on the course.''

In *Everett v. Goodwin,* 201 N. C. 734, cited by plaintiff, the negligence alleged against the golf club was that it had undertaken to provide ''rangers'' to police

the play on the course, and that the rangers employed for this purpose negligently failed to carry out their duty and enforce the rules governing play on the course, which the evidence showed the club had promulgated. Recovery was permitted upon the theory that defendant having assumed a duty and employed rangers who negligently failed to perform the very duty for which they had been employed thereby rendered the club liable. That, however, presents an entirely different situation. The decision was criticized in 9 Temple Quarterly 53. Since golfing accidents in many instances result from misdirected balls hitting players on other holes or fairways, policing the course through the means of rangers or other attendants could not prevent misdirected shots or prevent accidents on the greens.

Various other points are raised and discussed by counsel on both sides. It is earnestly urged by defendant that plaintiff was guilty of contributory negligence and it complains of error in charging the jury. Under the evidence there is considerable force to the contention that plaintiff was guilty of contributory negligence, having by his own evidence admitted that he was not in the exercise of ordinary care for his own safety, and we would be justified in reversing the judgment and remanding the case upon the sole ground that the verdict was contrary to the manifest weight of the evidence. Since there is no substantial dispute as to the evidence, however, it would serve no useful purpose to remand the cause. We are of the opinion that under the pleadings and evidence plaintiff failed to show that defendant was guilty of any negligence proximately causing the injury to plaintiff; the court should have directed a verdict. Therefore the judgment of the superior court is reversed.

*Judgment reversed.*

SCANLAN and SULLIVAN, JJ., concur.