**Nels H. Erickson, Plaintiff-Appellee, v. Wagon Wheel Enterprises, Inc., a Corporation, and Henry Wilson, d/b/a Wagon Wheel Stables, Defendants-Appellants.**

**Gen. No. 68–10.**

Second District.

October 18, 1968.

Rehearing denied November 22, 1968 and opinion modified December 11, 1968.

ABRAHAMSON, P. J., dissenting.

Knight and Knight, of Rockford, for appellants.

North, North & Ohlson, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This is a personal injury action arising from plaintiff's fall from a horse which was owned by the defendants. A $3,000 jury verdict and judgment for the plaintiff resulted, from which the defendants appeal.

The defendants claim as error that the court failed to direct a verdict at the close of all the evidence, that the court failed to rule as a matter of law that the plaintiff was guilty of contributory negligence, that the court failed to instruct the jury on certain issues, that the court erred in excluding from evidence the exculpatory clause

contained in the document called the "SIGN IN" sheet pleaded as an affirmative defense, that the court erred in failing to enter judgment notwithstanding the verdict in favor of the defendants on the basis that the verdict was against the manifest weight of the evidence, and finally, that the plaintiff assumed the risk, and, therefore, could not recover regardless of any negligence of the defendants.

The plaintiff, age 43, had very little horseback riding experience previously and had had one lesson at the premises of the defendants two days prior to this occurrence.

While in the office, prior to the second lesson, the plaintiff signed a document called a "SIGN IN" sheet which contained an exculpatory clause. The document was as follows:

> "I hereby hire one horse with bridle and saddle from the Wagon Wheel Stables located at Rockton, Illinois. I represent I have carefully and fully examined and tested the gentleness and manners of the said horse and represent I am fully capable and competent of possessing, managing and riding said animal during the period of this bailment and I hereby accept the animal as fully suitable for my requirements.

> "I further represent I have carefully examined and tested the bridle, saddle and fastenings on each and find the same to be in good condition, free from defects and that the same are fully adequate for my purpose.

> "I further represent I will use ordinary care in the use of the said horse and that I will not abuse, mistreat or ride said horse in a reckless or careless manner and I will use said equipment in the usual and ordinary manner.

"I further represent and agree that Wagon Wheel Stables or its agents have made no representations to me of any kind or character concerning the suitability, gentleness or the habits of said animal and I hereby assume full risk and responsibility for any accident which might happen to me, or liability for injury to any other person or persons while the said animal and equipment are under my control and in my possession.

"I further represent that Wagon Wheel Stables through its agents and employees, in my presence and with me, have fully and carefully examined and tested the said equipment, and that such examination, the equipment was free from defects at the time of this bailment.

"Now, therefore, in consideration of the representations made by me and the bailment of the said horse to me for the period of this contract by the said Wagon Wheel Stables I do hereby remise, release and forever discharge and by these presents do for myself, heirs, executors and administrators, remise, release and forever discharge the said Wagon Wheel Stables, its agents, employees or servants of and from all manner of actions, cause, and causes of action, suits, reckonings, controversies, damages, claims and demands whatsoever, in law or in equity which I now have or may hereafter in the future can or may have or which my heirs, executors or administrators, hereafter can, shall or may have by reason of any matter, cause, or thing, whatsoever, arising out of any matter or thing contained in this agreement or, in pursuance of, or arising out of or in connection with any matter or thing arising out of the bailment by me of the within described horse.

"I further represent no oral representations have been made on behalf of the Wagon Wheel Stables, that this agreement constitutes our complete understanding and that the representations made by me are true and are made for the purpose of securing the bailment of said horse and equipment under the terms and conditions hereof."

It further contained among numerous other signatures:

| " 'Date | Name | Address | City or Town |
|---------|------|---------|--------------|
| 6–24–66 | /s/ Nels H. Erickson | 3219 Belmont | Rockford |
| | /s/ Pat Erickson | . . . . . . . . . . . . | . . . . . . . . . .' " |

A female employee of the stable told the plaintiff to sign the book that was on the table. Plaintiff and his wife testified that plaintiff asked why he had to sign since he had not signed anything two days prior on the previous lesson, and that the employee answered that if he was going to take a lesson he did not have to sign the "SIGN IN" sheet because it was for people going on a cross-country trail ride, but by this time the plaintiff had already signed it. The employee denied any conversation with plaintiff with reference to signing the sheet and testified that all riders were to sign, including those who were taking lessons. Plaintiff testified that the employee did not point out any of the language nor did she tell the plaintiff that what he was signing contained an exculpatory clause or was in the nature of a release of liability of the defendants.

The plaintiff went out into the riding ring and mounted the horse. Thereafter, the facts are in dispute. The plaintiff contends after getting up on the horse, he took his feet out of the stirrups because they were too short and was sitting astride the horse waiting for the stirrups to be adjusted. A stableman had thrown the reins of the horse over its neck. The plaintiff was seated on the horse for perhaps ten to fifteen seconds when the stableman let

go of the horse. The horse jerked its head up, turned a half circle, bucked, and the plaintiff was thrown off. There was testimony that there was an open stable door, in support of plaintiff's theory that the horse bolted toward it.

The defendants testified that the stirrups had been adjusted for the proper length of the plaintiff, that the plaintiff had placed his legs in the stirrups, and thereafter, the horse slowly started to walk while the plaintiff had his legs out of the stirrups when he slowly rolled off the horse, thereby sustaining the injury. All the defense witnesses testified that the stable doors were closed.

The court at the close of all the evidence made the following statement to the jury:

> "During the course of this trial we have been speaking about a register that was signed, a piece of paper that was signed, a release that was signed. I have gone over this instrument and I believe from a standpoint of law this is not a release liability. I am not going to admit the exhibit into evidence and I ask that you disregard any testimony regarding a release.

> "The sole questions are those as I said before, first, are the defendants guilty of negligence. Was the defendant free from contributory negligence and were the injuries resulting in the nature and extent thereof. I know sometimes it's difficult to say how to put it out of your mind but I ask you not to consider that element in this lawsuit any longer. I think it is not a legal release, in other words."

█ Dealing first with the issue as to whether or not exculpatory clauses are valid under the laws of this State, we hold that clauses that exculpate a person from the consequences of his negligence are sustained in absence of any statute voiding them. In Owen v. Vic Tanny's Enterprises, 48 Ill App2d 344, 348, 199 NE2d 280 (1964), an

exculpatory clause was held valid for use of gymnasium facilities.

■ However, whether the exculpatory clause is binding due to the circumstances surrounding its execution is one of fact which must be determined by the trier of fact, in this case, the jury. Whether or not the exculpatory clause contained in the "SIGN IN" sheet is binding upon the plaintiff in this cause of action was one of fact for the jury to determine.

In Jeute v. Jarnowski, 393 F2d 513, 515 (1968), the Seventh Circuit Court of Appeals held that the trial court erred in entering summary judgment, on the basis that the circumstances surrounding the signing of an exculpatory clause dealing with plaintiff's action for damages when he was thrown to the ground and injured while mounting a horse, was one of fact and not a proper matter for disposition by summary judgment.

Further, see Moore v. Edmonds, 384 Ill 535, 548, 549, 52 NE2d 216 (1943).

Illinois courts subscribe to the distinction between fraud in the execution or mistake in execution and fraud or misrepresentation as to collateral matters or as to the nature and value of the consideration. When the fraud goes to the collateral matters, equity must overturn the release, but, when the fraud or misrepresentation go as to the execution of the document itself, then this matter is to be determined in law by the trier or the facts.

In Chicago City Ry. Co. v. Uhter, 212 Ill 174, 72 NE 195 (1904) at Page 176, the court held:

"... There are two kinds of fraud, for which such a release, as was here introduced in evidence, may be impeached. When a party, signing such an instrument, is induced to execute it by a misrepresentation of fraudulent representations as to collateral matters, or as to the nature and value of the consideration, resort must be had to a court of equity

302

for relief. In such cases, the party fully understands what he is signing, and is aware of the nature and character of the instrument executed by him, but is deceived by fraudulent representations as to facts outside of the instrument itself. There is another kind of fraud however, for which a release may be impeached, and that is fraud, which inheres in the execution of the instrument; . . . . Where fraud of the latter kind exists, that is, fraud in the execution of the instrument itself, it may be shown in an action at law."

The court further, on page 177, stated that whether or not the plaintiff knew he was signing a release or merely a receipt for medical services was a question of fact to be determined by the jury. See also, Pawnee Coal Co. v. Royce, 184 Ill 402, 414, 56 NE 621 (1900).

We hold, therefore, that the trial court erred in ruling as a matter of law that the document known as a "SIGN IN" sheet containing the exculpatory clause did not apply and that the jury could not consider it.

■ Whether the release was fairly obtained or executed was a question of fact for the jury to decide. This related to the circumstances of the *execution* of the instrument. The jury should have been allowed to decide whether the plaintiff knew he was signing a release, whether there was a mutual mistake, or whether there was deception amounting to fraud in the execution sufficient to void the document. The court did not approach the matter of the release as a chancellor in equity, having declined to rule, prior to trial, on plaintiff's motion to strike the defendants' affirmative defense. This was proper, because this was not a case requiring rescission in equity of an agreement signed with knowledge of its contents on the basis of collateral representations. However, the error was in removing the fact issue as to the execution of the document on trial. See also, Johnson v.

Elgin, J. & E. Ry. Co., 338 Ill App 316, 328–329, 87 NE2d 567 (1949).

To guide the trial court upon the retrial of this cause of action, we shall discuss the other alleged errors committed by the trial court.

The defendants contend that the doctrine of assumption of risk applies. As basis for their authority, the defendants have cited Campion v. Chicago Landscape Co., 295 Ill App 225, 240, 14 NE2d 879 (1938), which holds that the doctrine of assumed risk is not limited to the relation of master and servant, but applies equally to any relationship voluntarily assumed, contractual or not.

In Conrad v. Springfield Consol. R. Co., 240 Ill 12, 88 NE 180 (1909), the court held at page 17:

> "Appellant's contention that appellee must be held, as a matter of law, to have assumed the risk cannot be sustained, since the doctrine of the assumption of risk is only applicable to cases arising between master and servant. . . ."

In Hensley v. Hensley, 62 Ill App2d 252, 210 NE2d 568 (1965), the court said at page 259:

> "In support of his position that the doctrine has been applied in cases not involving the master servant relationship, he cites Brownback v. Thomas, 101 Ill App 81, and Campion v. Chicago Landscape Co., 295 Ill App 225, 14 NE2d 879. Assuming that these cases support defendant's position, neither opinion cites authority sufficiently persuasive to cause this court to disregard the clear pronouncement of our Supreme Court. . . . We hold that the defense of the assumption of the risk is not available to the defendant in this case and therefore the trial court's refusal to instruct on this defense was not error."

■ We, therefore, hold that the defense of the assumption of risk is not available to the defendants in this case, and that the court did not err in so refusing to instruct the jury.

We do not consider the questions raised as to the sufficiency of evidence in view of our holding that the entire cause must be remanded for a new trial.

As this cause of action is remanded for a new trial, appropriate instructions as to the issues consistent with this opinion may be tendered and we do not here consider the instructions issues on this appeal.

■ This court has taken under advisement a motion filed by the plaintiff-appellee for reimbursement for printing the additional abstract and for reasonable attorneys' fees. We hold that the abstract of the defendants-appellants was substantially in conformity with the spirit and intendment of the Supreme Court Rules and therefore the motion of the plaintiff-appellee for reimbursement and for attorneys' fees for the additional abstract is hereby denied.

We, therefore, reverse and remand for a new trial in accordance with this opinion.

Reversed and remanded with directions.

MORAN, J., concurs.

ABRAHAMSON, P. J., dissents.