DAVID MORROW, Plaintiff-Appellee, *v.* AUTO CHAMPIONSHIP RACING ASSOCIATION, INCORPORATED, Defendant-Appellant.

(No. 53658;

First District—November 16, 1972.

Steven A. Milwid and Richard E. Mueller, both of Lord, Bissell & Brook, of Chicago, for appellant.

John J. Kennelly, Lawrence P. Hickey, and Sidney Z. Zarasik, all of Chicago, for appellee.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court entered upon a jury verdict of $55,000 returned in favor of the plaintiff. Although defendant raises numerous points on appeal, we need only consider one

issue which we deem dispositive of the case. That is, did the exculpatory contract entered into by the parties insulate the defendant from the negligence alleged in the instant lawsuit?

We reverse.

On August 18, 1962, David Morrow, the plaintiff, contracted Auto Championship Racing Association (hereinafter referred to as "A.C.R.A.") so that he might race his automobile in stock car races conducted by A.C.R.A. at Raceway Park which is located at 127th and Ashland Avenues. Although he had been engaged in amateur stock car racing for two years, he had never participated in an A.C.R.A. conducted meet. He was given an A.C.R.A. contract agreement and an A.C.R.A. Benefit Plan registration form which he took home with him. The contract provided that A.C.R.A. would allow the applicant to engage in A.C.R.A. activities, that A.C.R.A. would cover applicant for injuries or death sustained while engaged in these activities, and that A.C.R.A. would bear all expenses incurred in the bonding of the applicant. The Benefit Plan provided insurance against injuries incurred while racing and recited:

> "In consideration of the acceptance by A.C.R.A., Inc. of my license application and issuance of license, and in consideration of the foregoing, I do hereby release, remise and forever discharge A.C.R.A., Inc. the promoters presenting races or other events under A.C.R.A., Inc. sanction and the owners and lessees of premises in which A.C.R.A., Inc. sanctioned races or other events are presented * * * of and from all liability, claims, actions and possible causes of action, whatsoever that may accrue to me or to my heirs, * * * from every and any loss, damage and injury (including death) that may be sustained by my person and property while in, about, en route into and out of premises, where A.C.R.A., Inc. sanctioned races or other events are presented."

Plaintiff returned these completed forms on August 26, 1962. That evening he arrived at Raceway Park so that he could participate in races to be held that night. Upon arriving he joined a line of people waiting to sign in to the Raceway. The sign-in form contained broad language exculpating A.C.R.A. and Raceway Park from liability for injuries sustained on the premises. Plaintiff Park from liability for injuries sustained on the premises. Plaintiff testified, as did two other drivers whom he called as his witnesses, that this exculpatory language had been folded under and attached to a clipboard so that it could not be readily viewed. Plaintiff testified that the area in which the sign-in sheet release was executed was poorly lighted in that available lights were focused on the Raceway. Plaintiff then signed a pit pass which referred to the release signed above, and returned the signed portion to an official in attendance.

After he had engaged in one race, plaintiff's car incurred mechanical trouble. He had the car pushed into the pits and there commenced to work on it. Subsequently, another race was in progress. A car lost a wheel causing it to hit a retaining wall. It then went out of control, followed the contour of the wall off the top of one of the turns, and eventually careened into the pit area where it pinned plaintiff, so badly damaging his leg that it had to be amputated below the knee. Plaintiff was hospitalized for three weeks, and all of his hospital bills were paid through the A.C.R.A. Benefit Plan.

Plaintiff's theory at trial was that the defendant was negligent in conducting races at an unsafe racetrack. The breach of safety complained of was that the pit area was positioned in such a way that an out-of-control auto could enter it and injure people working there, and furthermore, that defendant took no reasonable precaution to prohibit an out-of-control auto from so doing.

Defendant argued that it was not negligent, but that even if it were, plaintiff would be precluded from recovering against it because of a series of releases knowingly executed by plaintiff.

Although a series of releases was signed by the plaintiff, there was some testimony at trial suggesting that the sign-in release was presented in such a manner as to preclude plaintiff from knowing that it was a release that he was signing.

We need not concern ourselves with the sign-in release, however, because we feel that the release contained in the A.C.R.A. Benefit Plan is determinative of the issue. Plaintiff's argument in relation to this release is essentially that the A.C.R.A. contract and the A.C.R.A. Benefit Plan never came into effect because plaintiff was never issued a "license," and furthermore, even if they did come into effect, the exculpatory language contained therein is void as against public policy.

The record discloses that, although plaintiff did not return his completed A.C.R.A. membership application forms until the night he was injured, he was permitted to, and did race that night. He received benefits, including complete payment of his hospital bills through the A.C.R.A. Benefit Plan, a plan which only covered "licensed members." Furthermore, his application bore the notation that plaintiff had been assigned a license number and was classified in the novice division. It was these things which plaintiff bargained for and which constituted the consideraton for plaintiff's release of defendant from liability for its negligence, not the receipt of a piece of paper bearing the notation "license." This being so, our sole remaining query is whether such a release is violative of the public policy of this state.

■■ The question of whether exculpatory agreements are against pub-

lic policy calls into conflict two tenets of the law: First, a party should be liable for the negligent breach of a duty which he lawfully owes to another; and second, a party should be able to freely contract about his affairs. (*Simmons v. Columbus Venetian Stevens Bldgs.* (1959), 20 Ill. App.2d 1, 155 N.E.2d 372.) It has been held in one jurisdiction that the former absolutely controls the latter (see: *Wessman v. Boston & Maine R.R.* (1930), 84 N.H. 475, 152 A. 476), but such is not the rule in Illinois. Illinois looks rather to the relationship of the contracting parties, and determines if the nature of that relationship precludes contractual exculpation of one of the parties. Thus, Illinois law will not allow public carriers to contract away their liability to passengers. (*Checkley v. Illinois Central R.R.* (1913), 257 Ill. 491, 100 N.E. 942.) It will not permit an employer to avoid liability to his employees arising from his negligence. (*Jackson v. First Nat. Bank* (1953), 415 Ill. 453, 114 N.E.2d 721.) Nor will it permit an innkeeper to relieve himself of liability for his employee's negligence toward his guests. (Ill. Rev. Stat. 1971, ch. 71, par. 1 *et seq.; Burton v. Drake Hotel Co.* (1925), 237 Ill.App. 76.) In the area of the landlord-tenant relationship, on the other hand, the courts have refused to declare exculpatory contracts void as being against the public policy of the state. (*O'Callaghan v. Waller & Beckwith Realty Co.* (1958), 15 Ill.2d 436, 155 N.E.2d 545; *Sweney Gasoline and Oil Co. v. Toledo, P. & W. R.R.* (1969), 42 Ill.2d 265, 247 N.E.2d 603; see, Comment, *Proposed Statutory Alterations of the Landlord-Tenant Relationship for the State of Illinois,* 19 DePaul L. Rev. 752, n. 49 (1971).) In fact, the more recent cases indicate that exculpatory clauses are to be sustained in the absence of any statute voiding them. (*Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App.2d 344, 199 N.E.2d 280; *Erickson v. Wagon Wheel Enterprises, Inc.* (1968), 101 Ill.App.2d 296, 242 N.E.2d 622.) Such a statute, declaring exculpatory clauses in leases of real property void as against public policy, was recently enacted by the Illinois General Assembly. Ill. Rev. Stat. 1971, ch. 80, par. 91.

There is nothing about the relationship between a race promoter and a driver which would place it into the employer-employee exception to the Illinois rule on exculpatory clauses. The record demonstrates that plaintiff was a truck driver who pursued racing as a hobby. Raceway winnings did not constitute an essential part of plaintiff's income. Rather, plaintiff engaged in the sport, in his own words, for the "thrill of racing."

Neither is stock car racing of such a semi-public nature that exculpatory agreements between the parties must be held void.

Finally, a search of our statutes has disclosed no intention on the part of the legislature to hold exculpatory provisions, in a case such as ours, invalid.

██ Therefore, we hold that an agreement between a participant in and a promoter of a stock car race, whereby the former assumes the risk of participating and releases the latter from claims due to the latter's negligence, is not void as against the public policy of this state. Other jurisdictions which have confronted the same problem have reached similar conclusions. *French Special Services, Inc.* (Ohio Ct.App., 1958), 159 N.E.2d 785; *Hine v. The Dayton Speedway Corp. et al.* (Ohio Ct.App., 1969), 252 N.E.2d 648; *Corpus Christi Speedway v. Morton* (Texas Ct.Civ.Apps., 1955), 279 S.W.2d 903; cf. *Lee v. Allied Sports Associates, Inc.* (Supr.Ct. Mass., 1965), 209 N.E.2d 329.

For the above-stated reasons the release contained in the A.C.R.A. Benefit Plan executed by plaintiff is a bar to plaintiff's suit, and this case must be reversed.

Judgment reversed.

DEMPSEY and McNAMARA, JJ., concur.