510 F.2d 1065
 Eugene J. RUTTER et al., Plaintiffs, Counter-Defendants, Appellees
v.
ARLINGTON PARK JOCKEY CLUB et al., Defendant,
Counter-Plaintiff, Appellant.
ARLINGTON PARK JOCKEY CLUB, Third-Party Plaintiff, Appellant,
v.
Tracey BOUGAN, Third-Party Defendant, Appellee.
 No. 74--1022.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 20, 1974.
Decided Feb. 4, 1975.
 
 Gary M. Elden, Chicago, Ill., for appellant.
 Daniel Karlin, Joseph B. Lederleitner, Chicago, Ill., for appellees.
 Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.
 HASTINGS, Senior Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the district court, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.,[1] dismissing defendants' counterclaim and third-party complaint. We reverse and remand to the district court with directions to reinstate the counterclaim and third-party complaint.
 
 
 2
 Plaintiffs were the owners of five racing horses which were brought to the Arlington Park Race Track owned by the Arlington Park Jockey Club (Club), by plaintiffs' horse trainer, Tracey Bougan, in connection with a race. In order to secure stables for the horses, Bougan signed, as the applicant, a '1971 Stall Application,' which is included as an appendix to this opinion. A note under the signature stated that a trainer signing the application represented that his signature was authorized by and was on behalf of the horse owners. The application stated that in consideration for the Club's provision of certain facilities and services to the applicant without charge, including 'fire and police protection,' the applicant agreed that the Club would assume 'no responsibility for loss or damage by fire . . . to . . . animals . . . located on the Premises.' The application further stated that the Club was free from liability 'whether or not such injury, loss or damage is caused by the negligent acts or omissions' of the Club, its employees or agents. The applicant also agreed to indemnify the Club from any liability for damage to the applicant's animals in connection with the use of the Club's property. On June 3, 1971, the five horses were killed in a barn fire.
 
 
 3
 Plaintiffs brought an action against the Club for damages in the amount of $310,500 for the loss of the horses, alleging that the Club had been negligent in maintaining a fire hazard and in failing to provide adequate fire alarms and fire fighting equipment. Jurisdiction is based on diversity of citizenship and the law of Illinois is controlling.
 
 
 4
 The Club filed a third-party complaint against Bougan, alleging that if he did not have authority to sign the application as agent for the plaintiffs then he was personally liable for whatever the plaintiffs might recover from the Club. The Club also filed a counterclaim against the plaintiffs alleging that they were bound by Bougan's actions and therefore required to indemnify the Club from any judgment awarded to the plaintiffs.
 
 
 5
 Plaintiffs and the Club each moved for summary judgment on the Club's affirmative defense that the stall application exculpated it from liability for the loss of the horses. The district court granted the plaintiffs' motion for summary judgment and denied the Club's motion. The court reasoned that since the Club had undertaken to provide fire protection, it was not clear that the intent of the agreement was to put the entire risk of fire loss on the plaintiffs. The court dismissed the Club's third-party complaint and counterclaim, sua sponte, on the grounds that they were dependent upon the validity of the exculpation and indemnification provisions. The court granted the Club's motion for a finding under Rule 54(b) of the Federal Rules of Civil Procedure that the two dismissals were immediately appealable. Thus, this is an appeal only from the dismissals of the third-party claim and counterclaim. However, because those dismissals were based on the same question of law as the partial summary judgment, the issue here is the same.
 
 
 6
 The question is whether, under Illinois law, a contract which provides for fire protection, but which also provides for indemnification and exculpation of the promisor from liability for fire losses, even if due to its negligence, is effective to free the promisor from liability for damages caused by fire.
 
 
 7
 Under Illinois law, courts will enforce contractual clauses exampting a party from liability for its own negligence, if it is clear from the contract that the parties' intent was to shift the risk of loss, 'unless (1) it would be against the settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement.' Jackson v. First National Bank, 415 Ill. 453, 460, 114 N.E.2d 721, 725 (1953). Our court recently reviewed the state law on this question and said:
 
 
 8
 (I)n Illinois, at least when contracts between parties of relatively equal bargaining strength are being construed, the risk that a party will be guilty of negligence is treated like any other commercial risk that may cause harm to the other party to a commercial transaction. In the evaluation of foreseeable commercial risks, Illinois seems to attach greater importance to the commercial interest in certainty than to the policy of deterring negligence. Gates Rubber Co. v. USM Corp., 7 Cir. 508 F.2d 603, 614 (1975) (Footnote omitted).[2]
 
 
 9
 Although there are a number of Illinois cases construing exculpatory clauses, a recent decision on the subject by the Illinois Supreme Court suggests that reference to those cases will not be useful in determining the parties' intent in a particular case. The court said:
 
 
 10
 We have examined the authorities cited by the parties . . . and conclude that the contractual provisions involved are so varied that each must stand on its own language and little is to be gained by an attempt to analyze, distinguish or reconcile the decisions. The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions. Tatar v. Maxon Construction Co., 54 Ill.2d 64, 67, 294 N.E.2d 272, 273--274 (1973).
 
 
 11
 In the instant case, the language is explicit that the Club is not to be liable for fire losses due to its negligence. The question is whether, as the district court suggested, the fact that the Club agreed to provide fire protection somehow makes this otherwise explicit clause ambiguous or inconsistent.
 
 
 12
 On this question the Illinois law is also clear. The courts have repeatedly upheld exculpatory clauses relieving a party from liability for negligence in performing a contractual obligation. For example, in Morrow v. Auto Championship Racing Association, Inc., 8 Ill.App.3d 682, 291 N.Ed.2d 30 (1972), the defendant contracted to permit the plaintiff to participate in the defendant's stock car race. The plaintiff signed an agreement releasing the defendant from all liability for any injury sustained at the race track. While the plaintiff was in the pits working on his car, another car in a race went out of control and careened into the pit and seriously injured him. Plaintiff sued the defendant for damages claiming negligence in conducting races at an unsafe track. The appellate court reversed a judgment for the plaintiff and held that the release was a bar to the plaintiff's suit.
 
 
 13
 Similarly, in Owen v. Vic Tanny's Enterprises, 48 Ill.App.2d 344, 199 N.E.2d 280 (1964), an exculpatory clause relieving defendant from liability for personal injuries contained in a gymnasium membership contract was held to bar a suit by a member who had been injured in a fall, allegedly due to the negligent maintenance of the floor adjacent to the swimming pool. See also Bers v. Chicago Health Clubs, Inc., 11 Ill.App.3d 590, 297 N.E.2d 360 (1973) (abstract only).
 
 
 14
 Further, in Halperin v. Darling & Co., 80 IllApp.2d 353, 225 N.E.2d 92 (1967), the Illinois court said, in dicta, that if a contract clearly so stated, a party could indemnify itself for damages arising out of its own negligence in performing a service it was contractually obligated to provide. In that case a lessor of a truck agreed to maintain the truck and the lessee agreed to hold the lessor harmless from any liability arising from operation of the truck. The truck was involved in a collision when its brakes, allegedly negligently maintained, failed. The court held that the lessor was only free from damages arising from operation of the truck and not from maintenance. The court further stated that if the lessor had included damages arising from maintenance in the exculpatory clause it would have succeeded in being free from liability for the collision.
 
 
 15
 In the instant case the broad exculpatory language of the stall application expressly included loss or damage by fire to animals whether or not caused by the Club's negligent acts or omissions to act. When there is such clear contractual language expressing the intent of the parties Illinois courts will not abrogate it. This was a contract between businessmen and it reflected good business judgment to place the risk of loss upon the party who could least expensively insure against it. It is unlikely that the Club would provide stable facilities free of charge if by doing so it incurred liability for damage to horses of substantial but unknown value. The cost of insurance would be greater for the Club than for the horse owners because the Club could not accurately predict the number and value of the horses that would be housed in its facilities from time to time.
 
 
 16
 The district court and plaintiffs cited Shelby Mutual Insurance Co. v. City of Grand Rapids, 6 Mich.App. 95, 148 N.W.2d 260 (1967), which held that a fire protection clause vitiated an exculpatory clause. This case is not, of course, an expression of Illinois law and, in our judgment, does not support the district court's holding. In Shelby, for a stipulated charge, the city agreed to supply fire protection to a family outside the city limits. However, the contract provided that the city would not be liable for losses due to its negligence or its failure to furnish adequate fire protection. When the family notified the fire department of a fire at its home, the dispatcher refused to send any fire fighting equipment. The city argued that the exculpatory clause relieved it from liability. The court disagreed. It held that the clause released the city from liability for failure to provide adequate protection but that there would be liability if it furnished no protection. If the contract were construed as the city argued it should be, it would be entirely illusory. This is not the situation in the instant case. There is no allegation here that the Club provided no fire protection. It would not be an illusory contract to agree to provide protection but be exculpated from negligence. The contract would still require that some fire protection be rendered.
 
 
 17
 Our review of Illinois law indicates that exculpatory clauses are not invalid merely because they disclaim liability for negligent performance of a contractual obligation. Under Illinois law, however, even if the parties intended exculpation, the agreement would not be enforced if there was something in the social relationship between the parties militating against upholding the agreement or if it would be against the settled public policy of the state to do so. Jackson v. First National Bank, supra. Here the parties' relationship was that of businessmen dealing at arm's length. There was no relationship such as that of employer-employee or common carrier-passenger that would call for an exception to the general rule on exculpatory clauses. The district court found it unnecessary to reach the question of whether the clause was unenforceable as against public policy because of its holding that the clause was invalid since it attempted to release a party from negligent performance of a contractual duty. Since we disagree with that holding we reach the question of public policy.
 
 
 18
 The public policy issue was briefed and argued by the parties on appeal. It is plaintiffs' contention that the exculpatory clauses violate public policy because state licensing of race tracks creates a public duty to provide fire protection. Illinois courts, however, have applied a strict test in determining when public policy interests will invalidate a contract. In Schnackenberg v. Towle, 4 Ill.2d 561, 565, 123 N.E.2d 817, 819 (1954), cert. denied, 349 U.S. 939, 75 S.Ct. 785, 99 L.Ed. 1267 (1955), the Illinois Supreme Court stated:
 
 
 19
 It has often been said that the public policy of the State is to be found in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of government officials. Courts will not look to other sources to determine the public policy of a State.
 
 
 20
 See also, Bruno v. Gabhauer, 9 Ill.App.3d 345, 292 N.E.2d 238 (1972); Erickson v. Wagon Wheel Enterprises, Inc., 101 Ill.App.2d 296, 242 N.E.2d 622 (1968). The test is not satisfied merely by showing that the state regulates the business which made the contract.
 
 
 21
 Plaintiffs have not pointed out any constitutional or statuory provisions or any decisions of Illinois courts which indicate that it would violate public policy to permit race track owners to exculpate themselves from liability to horse owners for fire losses. Where the legislature has wanted to invalidate exculpatory clauses in particular kinds of contracts it has done so. In 1971, for example, statutes were enacted declaring void as against public policy exculpatory clauses in leases, Ill.Rev.Stat. ch. 80, § 91 (1973), and in construction contracts, Ill.Rev.Stat. ch. 29, § 61 et seq. (1973). In circumstances not covered by such statutes, Illinois courts have declined to find exculpatory clauses to be violative of public policy. See, e.g., Morrow v. Auto Championship Racing Association, Inc., 8 Ill.App.3d 682, 685--686, 291 N.E.2d 30, 33 (1972) (stock car racing); Erickson v. Wagon Wheel Enterprises, Inc., 101 Ill.App.2d 296, 301, 242 N.E.2d 622, 625 (1968) (horsebackriding); Owen v. Vic Tanny's Enterprises, 48 Ill.App.2d 344, 348, 199 N.E.2d 280, 282 (1964) (gymnasium).
 
 
 22
 Plaintiffs have not succeeded in demonstrating that the exculpatory clauses in the stall application are 'so pregnant with evil as to be against public policy.' Schnackenberg v. Towle, supra, 4 Ill.2d at 565, 123 N.E.2d at 819.
 
 
 23
 In light of the foregoing we hold that under Illinois law the subject exculpatory and indemnification language is valid and enforceable. We reverse and remand to the district court with directions to reinstate the counterclaim and the third-party complaint and for further proceedings not inconsistent with this opinion.
 
 
 24
 Reversed and remanded with directions.
 
 APPENDIX
 1971 STALL APPLICATION
 
 25
 The undersigned owner(s) of the above named horses (hereinafter called the 'Applicant'), hereby make(s) application to the Principals (as this term is defined below) for a permit to use stalls and the facilities at Arlington Park (hereinafter called the 'Premises'). The term 'Principals' shall mean and include . . . The Arlington Park and Washington Park Jockey Clubs, both being divisions of Chicago Thoroughbred Enterprises, . . . In consideration of the granting of such stall space and of the furnishing of the use of the track for training purposes, the furnishing of water, electricity, fire and police protection and the removal of manure, garbage and various other services, all without cost or charge to the Applicant, the Applicant does hereby covenant and agree as follows:
 
 
 26
 2. Cooking and smoking is prohibited in stalls or tack rooms. Applicant acknowledges and agrees that the Principals assume no responsibility for loss or damage by fire, theft or accident to persons, animals, equipment, vehicles or any other property located, on the Premises.
 
 
 27
 6. Applicant agrees that neither the Principals nor the directors, officers, employees and agents of any of them, shall be liable under any circumstances for any loss or damage whatsoever, whether direct, indirect, consequential or resultant, including without limitation, death, personal injury or death of or injury to animals, and loss or damage to any property whatsoever, directly or indirectly arising out of or resulting from or connected with the use by the Applicant, owners, trainers, jockeys and their respective employees, agents and animals, of any portion of the Premises or of any property (including motor vehicles) owned, leased or controlled by the Principals, for any purpose or in any manner whatsoever, including, without limitation, racing, training or transportation, and whether or not any such injury, loss or damage is caused by the negligent acts or omissions to act on the part of any Principal or the respective directors, officers, employees and agents of any Principal. All risks involved in connection with any act or failure to act referred to in this paragraph or arising directly or indirectly from the assignment to or utilization by the Applicant of stall space or the use of any portion of the Premises are assumed solely, fully and completely by the Applicant, his jockeys, servants, employees and agents.
 
 
 28
 7. Applicant agrees to defend, protect, save harmless and indemnify the Principals, and their respective directors, officers, employees and agents, from any and all liability, suits, claims, demands, damages, fees, costs and expenses, arising out of or claimed to arise out of or resulting from or claimed to have resulted from any injury or damage to the person, animals or property of the Applicant, his agents, employees, contractors or any other party rendering any service to the Applicant, in connection with the use by the Applicant, his agents, employees, contractors or any other party rendering any service to the Applicant, of any portion of the Premises or of any property (including motor vehicles) owned, leased or controlled by the Principals, for any purpose or in any manner whatsoever, including, without limitation, racing, training, or transportation, whether or not any such injury or damage is caused by the negligent acts or omissions to act on the part of any Principal or the respective directors, officers, employees and agents of any Principal.
 
 
 29
 /s/ Tracey Bougan
 
 Applicant/Trainer's Signature
 
 30
 NOTE: If this Application is signed other than by the owner or owners of each of the horses named on the face side hereof, the trainer signing this Application represents that he is authorized by each such owner to sign this Application and further represents that he has signed this Application on behalf of each such owner.
 
 
 
 [1]
 Rule 54(b), Fed.R.Civ.P., provides in pertinent part, 'When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.'
 
 
 [2]
 Our court has often in the past noted that Illinois law permits a party to indemnify itself from the consequences of its own negligence. See, e.g., Granite City Steel Co. v. Koppers Co., 7 Cir., 419 F.2d 1289, 1290 (1969); Halverson v. Campbell Soup Co., 7 Cir., 374 F.2d 810, 812-813 (1967); Spurr v. LaSalle Construction Co., 7 Cir., 385 F.2d 322, 330 (1967), all citing Bentley v. Palmer House Co., 7 Cir., 332 F.2d 107, 109--111 (1964). See also, Chicago R.I. & P.R.R. v. Chicago, B. & Q.R.R., 7 Cir., 437 F.2d 6, cert. denied, 402 U.S. 996, 91 S.Ct. 2173, 29 L.Ed.2d 161 (1971)