The bill of complaint in this case is a class bill filed by the complainant who owns 2,500 shares of seven per cent. non-cumulative preferred stock and 300 shares of common stock of the defendant corporation. The purpose of the bill is to protect complainant's rights as a preferred stockholder.
The matter first came before me on application for an adinterim restraint to prevent the payment of a dividend to the common stockholders which payment, it is claimed, would violate the rights of the preferred stockholders. Since hearing the motion, counsel have stipulated that I decide the whole case on the pleadings, affidavits and a stipulation entered into by counsel.
From the pleadings, affidavits and stipulation it appears that the defendant, American Car and Foundry Company, *Page 421 
was organized under the laws of this state on February 20th, 1899. It acquired eighteen manufacturing plants all of which are situated in the eastern part of the United States. The principal business of the defendant has been the manufacture of railroad cars and equipment and, at the present time, the manufacture of tanks, armorplate, shells and other material for the United States and Great Britain. The defendant has acquired or established several subsidiaries which are as follows: American Car and Foundry Export Company, American Car and Foundry Investment Corporation, Carter Carbureter Company, American Car and Foundry Securities Corporation, American Welding Company, Railway Equipment Company of Argentine, Railway Equipment Company of Brazil, Railway Equipment Company of Cuba, and American Car and Foundry Company, Ltd., of England. The above are foreign corporations in that they are not incorporated under the laws of this state. All the stock of these companies is owned either by the defendant or one of its other subsidiaries. The officers and directors of the subsidiaries have been officers, directors or employees of the defendant. In most instances the principal offices of said companies are at the principal office of the defendant in New York City. The books, records and accounts of the subsidiaries have been kept by the auditing department of the defendant although separate records and accounts have been maintained by each subsidiary as if it were in fact a separate entity as, in law, it is.
The capital of the defendant, at the time of its corporation, consisted of 300,000 shares of seven per cent. non-cumulative stock of the par value of $100 each and 300,000 shares of common stock of the par value of $100 each. The certificate of incorporation was amended in the year 1925 and thereby the 300,000 shares of common stock of the par value of $100 each was changed to 600,000 shares of no par value. The portion of the amended certificate, which effected this change, reads as follows:
"The Preferred Stock shall be entitled out of any and all surplus net profits, whenever declared by the Board of Directors, to non-cumulative dividends at the rate of not to exceed seven (7) per cent. for each year from the first day of March, 1899, to the first day of *Page 422 
May, 1925, and for each and every fiscal year thereafter (i.e., from May 1st, 1925), payable in preference and priority to any payment of any dividend on the Common Stock for such fiscal year. * * *
"The Common Stock shall be subject to the prior rights of the holders of the Preferred Stock as herein declared. If after providing for the payment of full dividends for any fiscal year on the Preferred Stock there shall remain any surplus net profits of such year, any and all such surplus net profits of such year and of any other fiscal year after the full dividends shall have been paid on the Preferred Stock, shall be applicable to such dividends upon the Common Stock as from time to time shall be declared by the Board of Directors, and out of any such surplus net profits, after the closing of any fiscal year, the Board of Directors may pay such dividends upon the Common Stock of the corporation for such fiscal year, but not until the dividends upon the Preferred Stock for such fiscal year shall have been actually paid or provided and set apart. * * *"
Seven per cent. dividends were paid on the preferred stock to and including July 1st, 1932. Since that time the following dividends on the preferred stock have been paid or declared:
 4% — paid April 20th, 1937, out of surplus net profits for
 1937.
2 1/2% — paid April 23d 1938, out of surplus net profits for
 1938.
1 3/4% — paid on April 19th, 1941, representing 19c per share of
 surplus net profits for 1937, and 10c per share out of
 the surplus net profits for 1938, and $1.46 per share
 out of the surplus net profits for 1941.
1 3/4% — paid July 7th, 1941, out of the surplus net profits for
 1941.
 2.04% — declared July 7th, 1941, out of the surplus net profits
 for 1941, payable August 29th, 1941.
1 3/4% — declared July 10th, 1941, out of the surplus net profits
 for 1941, payable October 1st, 1941.

The directors of the defendant apparently intended to exhaust the net earnings of the company for the years 1937 and 1938 by the payment of the dividends mentioned for those years. However, they underestimated the profits for those years and declared a dividend on the preferred stock of 29c a share for the year 1941 to cover the difference. *Page 423 
On July 10th, 1941, the directors declared a dividend of $1 per share on the common stock, one-half of which was payable from its "Reserve for Dividends on the Common Capital Stock, to be paid when and as declared by the Board of Directors," and the other half from the surplus net profits accumulated prior to April 30th, 1941, which remained after the payment of the 1941 preferred stock dividends.
Complainant alleges that the surplus net profits for the fiscal year 1936 were more than $3,500,000 or more than seven per cent. per share on the preferred stock. No dividend was either declared or paid for that year. It is alleged that the surplus net profits for the year 1938 were more than $1,125,000 which would be at the rate of at least $3.89 per share on the preferred stock. The total dividends declared for 1938 were $2.60 per share. Complainant, therefore, contends that since no dividends were paid on the preferred stock for the year 1936 and since only a part of the dividends were paid on the preferred stock for 1938, the directors of the defendant should be restrained from paying any dividends on the common stock from funds which are properly surplus net profits for either of said years.
Complainant, by its answer, alleges that there were no surplus net profits for the year 1936 and that the surplus net profits for the year 1938 did not exceed the dividends paid on the preferred stock for that year.
Therefore, the question to be determined is what were the surplus net profits for the year 1936 and 1938? Defendant contends that in determining the net profits for dividend purposes it may compute its earnings on a consolidated basis; that is, that in addition to the earnings or losses of the parent company it may add or subtract the respective earnings or losses of the subsidiaries owned by it. On the other hand complainant contends that the earnings should be determined on a non-consolidated basis. To illustrate the earnings from the defendant and its subsidiaries, it appears that in 1936 the parent company had a deficit of $1,304,662.16. The dividends from subsidiaries were $4,860,200. The earnings of subsidiaries were $722,146.72. This left the deficit of the consolidated earnings of the parent company and its subsidiaries *Page 424 
of $582,515.44. For the year 1938, calculated on the same basis, the parent company and its subsidiaries had consolidated earnings of $753,407.44. It is, therefore, apparent that the consolidated earnings, when the dividends from the subsidiary companies are not accounted for, is vastly different from the result which is reached when such dividends are considered a part of the net profits of the defendant company.
The defendant says that the dividends received from the subsidiaries, which it owns, do not constitute a profit to it because the parent company was not enriched thereby. Defendant says that the dividends paid to it by the subsidiaries for the years 1936 and 1938 exceeded the earnings of the subsidiaries for the years in which the dividends were declared and that they were paid out of earnings of previous years. The defendant bases its argument on a false premise. It contends that separate corporations wholly owned by a parent company and directed by it in law are and should be considered subdivisions or departments of the parent company. In other words, defendant contends that the parent company and the subsidiaries referred to comprise one unit or enterprise. To substantiate this contention, counsel cites several cases. The first case cited is that of the NewJersey Title Insurance Co. v. Commissioner, 84 Fed. Rep.
2d 898. In that case the court disregarded the separate corporate identities in order to avoid an injustice.
The next case is Rippel v. Kaplus, 124 N.J. Eq. 303. In theRippel Case a subsidiary corporation opposed the confirmation of a sheriff's sale on the ground that it lacked financial resources to protect itself. This court disregarded the corporate identity and held that the parent company for its own purposes had prevented the subsidiary from raising funds to pay its debts and that, therefore, the petitioner was not a distressed debtor. Counsel quotes from the opinion in the above case as follows:
"While one company's ownership of shares of the capital stock of another does not necessarily create an identity of corporate interests between the two, `yet where such ownership of stock is resorted to, not for the purpose of participating in the affairs of the corporation in which it is held, in a manner *Page 425 
normal and usual with stockholders, but for the purpose of making it a mere agent or instrumentality, or department of another company, the courts will look through the forms to the realities of the relation between the companies as if the corporate agency did not exist and will deal with them as the justice of the case may require.' United States v. Reading Co., 253 U.S. 26;40 S.Ct. 425, 434. This rule has been followed in New Jersey.Ross v. Pennsylvania Railroad Co., 106 N.J. Law 536; Stockton
v. Central Railroad Co., 50 N.J. Eq. 52, 73. Chancellor McGill, in the last case, regarded the rule as an application of the doctrine, `Equity looks at the substance, not merely the outward form,' and he quoted Morawetz on Corporations § 227: `The statement that a corporation is an artificial entity apart from its members is merely a description in figurative language of a corporation viewed as a collective body. A corporation is really an association of persons, and no judicial dictum or legislative enactment can alter this fact.'"
The opinion does not sustain the contention of the defendant. In the case of United States v. Reading Co., therein referred to, the court disregarded the separate identities in order to prevent the consummation of a monopoly. In the case of Stockton
v. Central Railroad Co., also referred to in the Rippel
opinion, the court disregarded the form in order to prevent a fraudulent attempt to circumvent a statutory restriction against monopoly. In the case of Ross v. Pennsylvania Railroad Co., the Court of Errors and Appeals said:
"We agree that ownership alone of capital stock in one corporation by another, does not create any relationship that by reason of which the stockholding company would be liable for torts of the other * * *."
The case did not turn on the question of control by one corporation over another by reason of stock ownership. The situation in the case was that the word "Pennsylvania" was painted on the tender of an engine and the cars and the crew wore uniforms bearing the initials "P.R.R." The question presented to the jury was whether the Pennsylvania Railroad Company or the West Jersey Railroad Company, *Page 426 
the subsidiary, operated and controlled the train. The court said:
"Where a corporation holds stock of another, not for the purpose of participating in the affairs of the other corporation, in the normal and usual manner, but for the purpose of control, so that the subsidiary company may be used as a mere agency or instrumentality for the stockholding company, such company will be liable for injuries due to the negligence of the subsidiary, and the mere fact that an accident is caused by the negligence of persons in the employ of the subsidiary will not relieve the dominant company of responsibility."
It, therefore, follows that the rule there laid down is strictly limited to the facts in the case and must be dealt with accordingly. Another case referred to by defendant is NewarkLadder, c., Co., Inc., v. Furniture Workers Union, c.,125 N.J. Eq. 99. In that case the relationship of the parent company and the subsidiary was ignored in order to do substantial justice. The case involved an application for a restraint against picketing. Another case referred to is Gulf Oil Corp. v.Lewellyn, 248 U.S. 71, and also the case of Southern PacificCo. v. Lowe, 247 U.S. 330. Both of these cases involved questions relative to income tax and the decisions are limited to the particular facts in each case. The court found, by reason of such facts, that the dividends there paid to the parent company by the subsidiary were not taxable income.
There is a real distinction between a corporation and its stockholders. The corporate identity will be disregarded in equity only when it is necessary to do so in order to prevent fraud, deception, evasion or injustice. In such an event "Equity regards the substance and not the form." This rule was laid down recently in the case of Schmid v. First Camden National Bank,130 N.J. Eq. 254. Defendant's contention that separate corporate identities of wholly owned subsidiaries must always be regarded as mere departments or divisions of the parent company, is not supported by the cases.
Defendant submitted affidavits of several certified public accountants to the effect that the only proper method of *Page 427 
computing the earnings of the parent company and its subsidiaries is on a consolidated basis. Complainant, on the other hand, submitted affidavits of certified public accountants denying this contention. The fact is that the accounts of the parent company and those of the subsidiaries are kept separately. The consolidated account is made solely for the purpose of the annual report of the stockholders upon which the bases for the dividends are determined. Under such circumstances the defendant company must be considered a separate and distinct entity for the purpose of fixing dividends and the earnings and profits of the subsidiary companies do not enure to the benefit of defendant's stockholders until dividends are actually declared by its subsidiaries.
Defendant's brief suggests that there may be laches or an estoppel present in the institution of this action. The contention is that defendant has for many years presented consolidated reports to its stockholders which have never been questioned. There is nothing in the record, however, which establishes that the same conditions existed in previous years as existed in the years 1936 and 1938. This contention therefore falls.
The resolution of July 10th, 1941, declaring a dividend on the common stock, directed that one-half of the dividend be paid from the account entitled, "Reserve for Dividends on Common Capital Stock to be paid when and as directed by the Board of Directors." The account referred to in said resolution was set up about the year 1908. Various additions and deductions were made thereto and therefrom until in July, 1941, it amounted to approximately $3,000,000. Defendant contends that because this reserve was created from profits earned during years when full dividends were paid on the preferred stock, that the whole reserve is now available for payment of dividends on the common stock even though dividends on the preferred stock were not paid for the years 1936 and 1938. This reserve account was a mere bookkeeping entry which set up therein a portion of earned surplus and did not separate funds of the company from its general assets. The secretary of the defendant company, in his affidavit, states that, *Page 428 
"* * * the reserve above set out is in reality a part of the earned surplus, having been reserved out of the surplus net profits, although not treated as such on the respective balance sheets."
Defendant admits that where non-cumulative preferred stock has not been allotted the full dividend to which it is entitled in any one year and the corporation for that year has earned more than the dividend paid to the preferred stockholders, the preferred stock is entitled to have allotted to it such withheld earnings to the extent of its priority before dividends are paid to common stockholders. It was so held in Bassett v. U.S. CastIron Pipe, c., Co., 74 N.J. Eq. 668; affirmed, 75 N.J. Eq. 539,
and also in Day v. U.S. Cast Iron Pipe, c., Co., 95 N.J. Eq. 389; affirmed, 96 N.J. Eq. 736. The rule laid down in these cases has been followed in Lonsdale Securities Corp. v.International Mercantile Marine Co., 101 N.J. Eq. 554, 559, andBuckley v. Cuban American Sugar Co., 129 N.J. Eq. 322.
I, therefore, conclude that the restraint should be made permanent. The preferred stockholders are entitled to receive the surplus net profits for the years 1936 and 1938 not to exceed seven per cent. of the amount of the preferred stock before any dividends are paid on common stock from the reserve account to such extent, however, as the reserve is made up from the surplus net profits for the years 1936 and 1938. The surplus net profits for the year 1938, which consisted of the earnings of the defendant plus the dividends received from its subsidiaries, amount to over $1,125,000. Dividends of $2.60 on the preferred stock have been declared and paid based on the above surplus net profits. The rate, however, based on $1,125,000 would be at least $3.89 per share. Therefore, the common stock dividend voted last July should not be paid until the deficiency is provided for.
The same situation exists for the year 1936 for which year, however, there is a disagreement as to whether there was a profit or loss. The parent company shows a loss in its own operation before the receipt of dividends from its subsidiaries.
It is claimed that part of the dividend paid by the American Car and Foundry Securities Company (now known as *Page 429 
the American Car and Foundry Investment Corporation) was represented by promissory notes of the American Car and Foundry Motors Company. Defendant claims that the notes are not worth their face value for the reason that the American Car and Foundry Motors Company was insolvent at the time it declared the dividend. The parent company, however, holds the notes the principal of which has not been paid although it has received interest thereon. There is not sufficient proof before me to determine the question. I will refer this matter to a special master as suggested by the defendant for the purpose of determining the fact relative to same. *Page 430