PAUL J. KERN et al., Plaintiffs-Appellants, v. CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY, Defendant-Appellee.

(No. 55588; ■■■■■■■■■

First District—June 9, 1972.

Levin & Berger, of Chicago, (Burton Berger, of counsel,) for appellants.

Frank F. Fowle, Herbert S. Wander, Paul E. Freehling, and Pope, Ballard, Kennedy, Shepard & Fowle, all of Chicago, (Patrick C. Mullen, of counsel,) for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiffs are two shareholders of Class A (preferred) Stock in the defendant Chicago & Eastern Illinois Railroad Company, hereinafter C & EI. They seek to compel the payment of a 1959 dividend of $2 per share which they claim should have been paid to persons who exchanged or had their Class A shares redeemed in 1965, or who still hold their shares. The trial court granted defendant's motion for summary judgment

and plaintiffs appeal therefrom. The issues on appeal deal with the propriety of defendant's computations upon which it based its conclusion that there were no net earnings available for dividends on Class A shares for the year 1959.

The following facts are undisputed. Defendant C & EI was incorporated in Indiana in 1939 pursuant to reorganization proceedings supervised by the Interstate Commerce Commission, hereinafter ICC, and approved by Federal district court. As provided in its Articles of Incorporation, each share of Class A stock has a par value of $40 with an annual maximum dividend rate of $2. Dividends are cumulative but only to the extent that there are "net earnings available for dividends" in any given calendar year. As stated in the Articles of Incorporation:

> "If in any year there shall be no net earnings available for dividends, or if the amount of net earnings available  *  *  *  shall be less than the maximum dividend requirement  *  *  *, the deficiency shall not be made good in any subsequent year, nor shall any dividends accumulate with respect thereto."

During March 1965 the defendant made an offer to Class A shareholders to exchange each share of Class A stock for $40 in C & EI common stock plus $6 in dividends that had been "accumulated earned and unpaid" on the Class A shares. Seventy-five thousand, one hundred and five Class A shares were then outstanding. In July 1965 C & EI called the remaining outstanding Class A shares (39,712) for redemption.[1] The redemption price was $47.17; this figure represented the par value ($40) plus $7.17 in dividends that were then "accrued and unpaid" on the Class A shares. Under the terms of both the exchange offer and the redemption call, the C & EI computed that no dividends for the year 1959 had been "accumulated earned and unpaid" or "accrued and unpaid" on Class A shares. Defendant's records show that there was a deficiency in "net earnings available for dividends" on Class A stock for 1959 in the amount of $18,435.13.

Plaintiffs urge two theories in support of their claim for a $2 dividend for the year 1959. The first theory is based on the following: In 1959 defendant's wholly owned subsidiary, Chicago Heights Terminal Transfer Railroad Company, hereinafter CHTT, had net earnings of $392,193. CHTT's board of directors declared a $300,000 stock dividend; this sum was included in defendant's income statement and considered in computing the "net earnings available for dividends" on the Class A shares. CHTT placed $50,000 of the remaining $92,193 in its mandatory sinking

---

[1] Plaintiffs purportedly still hold their Class A shares, *i.e.*, they neither exchanged them nor had them redeemed.

fund; the other $42,193 was credited to its retained earnings account. The $92,193 in undistributed earnings of CHTT was not considered by C & EI as income nor as "net earnings available for dividends" on its Class A shares.

Plaintiffs contend that the undistributed 1959 earnings of CHTT should have been included in the income accounts of C & EI for 1959 thereby becoming "net earnings available for dividends" to Class A shareholders. They argue that their contention is supported by a proper construction of the defendant's Articles of Incorporation and the Uniform System of Accounts to which the Articles refer and also by generally accepted principles of accounting.

■■ Although the issue was not briefed, it is clear that the law of Indiana, the state where defendant is incorporated, is controlling. See *Guttman v. Illinois Central R. Co.*, 91 F.Supp. 285, aff'd 189 F.2d 927; Restatement (Second) of Conflicts § 304 (1971); 11 Fletcher Cyc Corp. § 5334 (perm. ed. rev. 1971).

■■ Indiana, like Illinois, recognizes that the rights of preferred shareholders to dividends are contractual rights with the Articles of Incorporation serving as the terms of the contract. *Rubens v. Marion-Washington Realty Corp.*, 116 Ind.App. 55, 59, 60, 59 N.E.2d 907; see *Elward v. Peabody Coal Co.*, 121 Ill.App.2d 298, 308, 257 N.E.2d 500.

Defendant's Articles of Incorporation state that "net earnings available for dividends" to Class A shareholders are to equal the amount of "income available for contingent charges" (income less fixed charges less certain specified sums). Income available for contingent charges, in turn, is to be computed in accordance with the 1939 Uniform System of Accounts prescribed by the Interstate Commerce Commission for steam railroads. The 1939 Uniform System of Accounts provides that:

> "Income accounts are those designed to show, as nearly as practicable, for each fiscal period * * * the returns *accrued* upon investments * * *. The net balance of income [or loss] shall be carried to Profit and Loss." (Emphasis supplied.)

Affidavits submitted by defendant in support of its motion for summary judgment showed that prior to and since 1959 CHTT has operated as a separate entity from defendant C & EI, having its own books, records and bank accounts. In 1959 the shareholders of C & EI and CHTT approved a plan to merge the two companies. However, in 1961 the ICC refused to approve the merger proposal. The decision, reported at 312 I.C.C. 564 (1961), stated that CHTT was to be maintained as a "distinct corporate entity." Additional affidavits submitted by defendant showed that officers of C & EI requested advice from the ICC as to the proper manner in which to account for the undistributed earnings of CHTT for

1959. A letter from the Director of the Bureau of Accounts for the ICC stated that:

"The Uniform System of Accounts does not require the transfer of earnings of a subsidiary to its parent, in the form of dividends or otherwise. Therefore, payment by a subsidiary to its parent of only those dividends duly declared by its board of directors is within the meaning of these rules."

Defendant's independent auditor was of the same opinion.

■■ Plaintiffs state that since C & EI's 100% ownership of CHTT is an investment, all income of CHTT must be considered income of C & EI. We disagree. Plaintiffs' argument assumes that the phrase "returns accrued on investments" in the Uniform System of Accounts, *supra*, applies to undistributed earnings of a subsidiary corporation. Black's Law Dictionary 37 (4th ed. 1968) defines "accrued" as "due and payable, vested." For Federal tax purposes income does not accrue to a taxpayer until he has a fixed or unconditional right to receive it (see *Franklin County Distilling Co. v. Commissioner of Int. Rev.* (6th cir. 1942), 125 F.2d 800, 805) and with reference to corporate law it is stated that:

"It is the *declaration* of the dividend which creates both the dividend itself and the right of the stockholder to demand and receive it. Eleven Fletcher Cyc Corp. § 5321 (perm. ed. rev. 1971)." (Emphasis supplied.)

See *Rubens v. Marion-Washington Realty Corp.*, 116 Ind.App. 55, 63, 59 N.E.2d 907, 910.

Accepting plaintiffs' argument would, in effect, mean "piercing the corporate veil" that exists between CHTT and C & EI. This would be inappropriate where each entity maintains separate books, records and accounts (see *American Trading & Pro. Corp. v. Fischbach & Moore, Inc.* (N.D. Ill. 1970), 311 F.Supp. 412, 415—416), and further, where the ICC has turned down a request to merge, stating that they were to be maintained as separate and distinct entities. See *Hart, Schaffner & Marx v. Campbell*, 110 Ind.App.. 312, 38 N.E.2d 895.

In an analogous situation in *Cintas v. American Car & Foundry Co.*, 131 N.J. Eq. 419, 25 A.2d 418, 422, aff'd *per curiam*, 132 N.J. Eq. 460, 28 A.2d 531, the court stated:

"[T]he defendant company must be considered a separate and distinct entity for the purpose of fixing dividends and the earnings and profits of the subsidiary companies do not enure to the benefit of defendant's stockholders *until dividends are actually declared* by its subsidiaries." (Emphasis supplied.)

Plaintiffs further argue that the earnings of C & EI and CHTT should

have been consolidated for purposes of determining "net earnings available for dividends" on Class A stock under generally accepted principles of accounting. They cite DeCapriles, Modern Financial Accounting, 38 N.Y.L.R. 1, 43—48 (1963). The author of the article supports the method of reporting a parent corporation's earnings on a consolidated basis for the purpose of informing interested parties as to the overall financial condition of the parent. However, contrary to plaintiffs' position, the author notes that recourse to the separate financial statements must be had when determining the legality of dividend declarations or other actions by any of the corporations. The "separate entity" view conforms with the following statement from Wixon, Kell & Bedford, Accountant's Handbook, 23—2 (5th ed. 1970):

"Profits of the subsidiary companies do not inure to the benefit of parent company shareholders until a dividend declaration is effected by the subsidiaries."

■■ In conclusion, we, along with the court below and the Director of the Bureau of Accounts for the ICC, believe that the $92,193 in undistributed earnings of CHTT was properly excluded by the defendant when determining the "net earnings available for dividends" in 1959 on its Class A shares.

■■ Plaintiffs' second theory for recovery of a $2 dividend for 1959 is based on the following:

In 1959 the C & EI's Illinois real estate tax bill amounted to approximately $535,000. It was paid under protest. In 1961 the Illinois Supreme Court ruled that the assessment base used in computing the real estate taxes of railroads was improper. Thereafter C & EI began receiving refunds [2] on the 1959 taxes paid under protest. As refunds were received over the years they were credited to the current year's income account rather than reopening and adjusting the income accounts for the year 1959; thus these amounts were not considered by C & EI as "net earnings available for dividends" to Class A shares for 1959.

The Director of the Bureau of Accounts for the ICC was also asked for advice as to the proper manner in which to account for these refunds. In a letter to the defendant he stated:

"The reopening and adjustment of income and expense accounts of applicable prior years for the purpose of recording subsequent years' transactions therein is not appropriate. Adjustments of this kind should be lodged in either current income or expense accounts or in appropriate retained income accounts."

---

[2] It is agreed that the net refunds were in excess of $200,000—more than enough to pay the $2 dividend for 1959.

The defendant's auditors, in expressing their opinion as to the proper accounting treatment for the $215,000 tax refund received in 1966, stated that it should be credited directly to the retained earnings account because a material distortion would result in the current income account if credited thereto; generally, non-material adjusting entries are credited to current income accounts. They further stated that whether refunds would affect the "net earnings available for dividends" for 1959 was "a legal issue relating to contractual relationships * * *."

The relevant provision of defendant's Articles of Incorporation states as follows:

"Article III, Section 7:

For the purposes of this certificate of Incorporation, any adjustments necessary to correct the income accounts of any prior year shall be made by appropriate entries which may either be made in the accounts of the current year or, * * * may be made, in whole or in part, in the accounts of any subsequent year or years, and any such debits or credits made in the accounts of any year to adjust entries in the income accounts of prior years shall be treated as income items *for the year in which entered on the books,* whether cleared through income or profit and loss accounts." (Emphasis supplied.)

Plaintiffs apparently construe the phrase "year in which [they are] entered on the books" to refer to the year in which the original entry, *i.e.,* the entry being adjusted, was recorded. However, we believe that the phrase clearly refers to the year in which the adjusting entry is made to the appropriate account. Thus, prior years' accounts are not to be reopened.

This has always been the defendant's policy. In fact, the "net earnings available for dividends" in 1959 were enhanced by refunds from real estate taxes received in 1959 but paid in prior years. The Articles of Incorporation clearly refute plaintiffs' argument that previous income accounts are to be reopened for the purpose of recomputing dividends.

The decision of the circuit court is affirmed.

Judgment affirmed.

LORENZ, P. J., and ENGLISH, J., concur.