VINCENT CHAMPAGNIE, Plaintiff, *v.* W. E. O'NEIL CONSTRUCTION CO., Defendant and Third-Party Plaintiff-Appellant.—(CAISSON CORPORATION, Third-Party Defendant-Appellee.)

First District (2nd Division)    No. 78-947

Opinion filed September 25, 1979.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (Donald G. Peterson, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Andrew Fylypovych, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Third-party plaintiff W. E. O'Neil Construction Company (hereinafter O'Neil) appeals from the dismissal of count I of its third-party complaint seeking indemnity from third-party defendant Caisson Corporation (hereinafter Caisson). The circuit court of Cook County found the indemnity agreement upon which count I was based to be void and unenforceable as against public policy in Illinois pursuant to section 1 of "An Act in relation to indemnity in certain contracts" (hereinafter indemnity statute). Ill. Rev. Stat. 1977, ch. 29, par. 61.

O'Neil appeals contending that the trial court erred in finding the public policy of Illinois so repugnant to contractual indemnity that its Wisconsin right of contractual indemnity against Caisson could not be enforced by Illinois courts.

On July 8, 1973, Vincent Champagnie was employed as a caisson

digger by Caisson, a subcontractor of O'Neil. He was injured when debris and timbers fell from ground level on top of him while he was working in a caisson 100 feet below the surface at a construction site in Oak Creek, Wisconsin. Champagnie filed an amended two-count complaint in the circuit court of Cook County against the general contractor O'Neil.

Count I of the amended complaint alleged that O'Neil violated a Wisconsin statute regarding an employer's duty to furnish a safe place of employment (Wis. Stat. §101.11 (1973).) Count II alleged that O'Neil failed to comply with certain regulations under the Occupational Safety and Health Act (29 C.F.R. §§ 1926.650 to 1926.652).

O'Neil's third party complaint, in count I, sought indemnity from Caisson in the event any settlement, judgment, or verdict was rendered against O'Neil. Attached to the complaint was the subcontract entered into between O'Neil and Caisson which contained an indemnity provision that obligated Caisson to defend, indemnify, and save harmless O'Neil against all loss, damage, and expense for injuries to persons arising directly or indirectly or connected with or incidental to the work performed by Caisson, and that Caisson could have no claim against O'Neil for the acts, failure to act, or the negligence of O'Neil.

Caisson filed a motion to strike and dismiss count I on the basis that the indemnification agreement was void as against public policy under the Illinois indemnity statute. Section 1 of the statute provides:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." Ill. Rev. Stat. 1977, ch. 29, par. 61.

On July 1, 1976, the circuit court granted Caisson's motion and found that although Wisconsin law applied to the instant complaint, Illinois' public policy against indemnification agreements in construction contracts would not allow Wisconsin's law permitting such assignments of indemnity to be enforced in the Illinois courts. The court stated that its order involved a question of law as to which there is substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation. The circuit court framed the issue as "whether the law of the forum state, Illinois, specifically its statute barring indemnity agreements in construction contracts, shall be given extraterritorial effect in an action which is based upon an occurrence in the state of Wisconsin and which has been brought pursuant to the law of that state."

On November 18, 1977, the circuit court vacated its order of July 1, 1976, on O'Neil's motion and reinstated count I of the third-party complaint.

On February 28, 1978, on Caisson's motion, the November 18, 1977, order was vacated and count I was stricken. The court found as a matter of law that the public policy of Illinois prohibited enforcement of a contractual indemnity cause valid in another State.

On March 3, 1978, O'Neil's motion to vacate the February 28, 1978, order was denied.

A court order of March 7, 1978, indicated that the controversy between O'Neil and Champagnie had been settled without prejudice to the third-party rights, indemnity rights, and contribution rights against Caisson in contract and under court orders of February 28, 1978, and March 3, 1978.

O'Neil appeals from the February 28, 1978, and March 3, 1978, orders.

## I.

At the outset we point out that the parties have argued only public policy considerations as to whether an indemnity agreement in a construction contract governed by and valid under Wisconsin law can be enforced in Illinois where such agreements by statute are said to be void as against public policy and wholly unenforceable. The parties have not contested the validity of such agreements under Wisconsin law, nor have they contested, apart from public policy considerations, the applicability of the substantive law of Wisconsin to the case. Therefore, we begin with a consideration of the public policy doctrine in the context of conflict of laws.

## A.

■■■ Under the public policy doctrine in a case involving a conflict of laws, a court should not refuse to apply the law of a foreign State, however unlike its own, unless it is contrary to pure morals or abstract justice, or unless the enforcement would be of evil example and harmful to its own people. (16 Am. Jur. 2d *Conflict of Laws* §6, 16 (1964); see also 17 C.J.S. *Contracts* §16, 619 (1963).) The mere fact that State laws may differ does not necessarily constitute a sufficient basis for the assertion that the rule of a foreign State is contrary to the public policy of the forum, rather there is a strong policy in favor of recognizing and enforcing rights and duties validly created by a foreign law. *Coleman v. American Sheet & Tin Plate Co.* (1936), 285 Ill. App. 542, 548, 2 N.E.2d 349.

Consistent with this conception of the public policy doctrine is the

formulation of the Restatement (Second) of Conflict of Laws §90 (1971), which provides: "No action will be entertained on a foreign cause of action the enforcement of which is contrary to the *strong public policy* of the forum." (Emphasis added.)

Comment c to this section points out the narrow application of the rule:

> "Actions should rarely be dismissed because of the rule of this Section. To come within the scope of the present rule, the local policy must be sufficiently strong to outweigh a state's natural desire to open the doors of its courts to suits involving foreign facts. A court should not refuse to entertain such a suit unless to do so, in the words of Judge Cardozo, 'would violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonwealth.' (*Loucks v. Standard Oil Co. of New York*, 224 N.Y. 99, 111, 120 N.E. 198, 202 (1918). As among States of the United States, it is particularly desirable that one State should entertain in its courts actions based on facts occurring in a sister State. Differences in policy among States of the United States are likely to be of a minor nature and the common interest of the States in the enforcement of rights without regard to State lines is particularly great."

It is O'Neil's contention that its Wisconsin right to contractual indemnity is not so repugnant to the public policy of Illinois as to bar its enforcement by Illinois courts. Caisson contends that indemnity agreements in construction contracts are repugnant to the public policy of Illinois as specifically prohibited in the indemnity statute.

The public policy of a State has been said to be found in its judicial decisions, legislation, and constitution, as well as customs, morals and notions of justice which may prevail in the State. *Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 332, 239 N.E.2d 799.

Section 1 of the Illinois indemnity statute specifically states that an agreement in a construction contract to "indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." (Ill. Rev. Stat. 1977, ch. 29, par. 61.) The constitutionality of this section of the statute was tested and upheld in *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, where it was challenged on the basis that it was a denial of equal protection because indemnity provisions in other types of contracts were enforceable.

The court found sufficient differences between the construction industry and other industries to form a reasonable basis for the classification pointing out that "* * * section 1 of the indemnity statute serves to protect workers in the industry and the public as well from

dangers associated with construction work. The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions." 61 Ill. 2d 494, 499.

It was also argued in *Davis* that section 3 of the statute, which provides: "This Act does not apply to construction bonds or insurance contracts or agreements" (Ill. Rev. Stat. 1977, ch. 29, par. 63), created an arbitrary and irrational exception to section 1. The court dismissed this argument by simply stating that section 3 makes it clear that section 1 was not directed at the purchase of bonding or insurance agreements to assure performance or the satisfaction of liability.

The relationship between sections 1 and 3 of the indemnity statute was dealt with more extensively by the supreme court in the case of *Capua v. W. E. O'Neil Construction Co.* (1977), 67 Ill. 2d 255, 367 N.E.2d 669. The issue in *Capua* was whether section 1 of the indemnity statute rendered indemnity agreements or hold harmless agreements in construction bonds void. The court found sections 1 and 3 harmonious in that they evidence a legislative intendment to protect the interests of the construction worker and the general public:

> "* * * [Section 3] protects the interests of construction workers and members of the general public who may suffer injury through improper construction or maintenance by preserving supplemental sources of compensation for injured persons, namely insurance and indemnifying and hold-harmless agreements in construction bonds. For example, a worker injured on a construction project may look to the owner of the building and the contractor, his employer, for compensation. However, there will be times when the worker will be unable to recover, as when the defendant is insolvent or the damages simply too large for him to satisfy. If the contractor were required by the owner to post a construction bond in which he agreed to indemnify or hold harmless the owner, the injured worker may look to the surety for satisfaction of his claim if the owner is unable to satisfy his liability. Section 1, without more, would deny the worker the possibility of recovering from the surety because it would void the indemnity or hold-harmless agreement in the construction bond. It is reasonable to conclude that the legislature, knowing that construction bonds are frequently used as a means to assure compensation for injured workers, enacted section 3 so that this potential source of compensation for injured workers would be preserved. Section 3 serves to complement section 1." 67 Ill. 2d 255, 260.

Crucial to our discussion here is the fact that the language in both

*Davis* and *Capua* was not directed to a conflict of laws situation, but rather to the meaning and constitutionality of the statute in a purely domestic situation. The intent of the legislature in respect to whether an indemnity agreement valid under the laws of Wisconsin can be enforced in Illinois is not revealed by reference to an opinion such as *Davis*, which was concerned with whether the statute had a reasonable basis for purposes of constitutional law. Rather the appropriate consideration here is whether the enforcement of the indemnity agreement, based on a contract to be performed in Wisconsin with the accident occurring there, is obnoxious to the public policy of Illinois.

Prior to the enactment of the Illinois indemnity statute, it was held that construction contracts indemnifying one against one's own negligent conduct were not void as against public policy. (*John Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 141 N.E. 739.) The indemnity statute voiding such agreements was made applicable only to agreements entered into after its effective date of September 23, 1971. (Ill. Rev. Stat. 1977, ch. 29, par. 62; *Valerio v. R & R Construction Co.* (1974), 20 Ill. App. 3d 48, 52, 312 N.E.2d 713.) As O'Neil points out, contractual indemnity occasioned by injuries arising from construction hazards existing after the indemnity statute became effective, as long as the indemnity agreement predated the effective date of the statute, would be enforceable in Illinois. And as was seen in the case of *Capua*, an agreement for indemnity for one's own negligence will be enforced if it is found in a construction bond or insurance contract. Or to say it another way, such an agreement, when provided for in a construction bond, would escape the voiding operation of section 1 of the statute.

The Illinois legislature by statute has invalidated exculpatory clauses in certain types of contracts such as construction contracts (Ill. Rev. Stat. 1977, ch. 29, par. 61) and leases (Ill. Rev. Stat. 1977, ch. 80, par. 91). But in circumstances not covered by such statutes, Illinois courts have declined to find exculpatory clauses to be violative of its public policy. See *Morrow v. Auto Championship Racing Association, Inc.* (1972), 8 Ill. App. 3d 682, 685-86, 291 N.E.2d 30; *Erickson v. Wagon Wheel Enterprises, Inc.* (1968), 101 Ill. App. 2d 296, 301, 242 N.E.2d 622; *Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 346, 199 N.E.2d 280; *Rutter v. Arlington Park Jockey Club* (7th Cir. 1975), 510 F.2d 1065, 1069 (applying Illinois law).

Caisson relies on the case of *Nonotuck Silk Co. v. Adams Express Co.* (1912), 256 Ill. 66, 99 N.E. 893, to support its contention that the indemnity provision cannot be enforced because it is repugnant to Illinois' public policy as expressed in its statute. The court in *Nonotuck Silk Co.* stated, "If a contract which is valid by the laws of another State is repugnant to the public policy, laws and institutions of this State and is expressly

prohibited by its statutory enactments, it will not be enforced by our courts." (256 Ill. 66, 75.) The court in *Nonotuck Silk Co.* did not simply say that the law of a foreign State would not be enforced because it was prohibited by statute in the forum State, but stated that it must also be repugnant to the public policy, laws and institutions of the forum State. *Pope v. Hanke* (1894), 155 Ill. 617, 40 N.E. 839, the case cited by the court in *Nonotuck Silk Co.*, involved an action by an innocent indorsee to recover upon notes given in settlement of transactions in futures. The notes were found to be gambling contracts. The action could have been maintained in Missouri where the notes were executed. In finding that the notes could not be enforced in Illinois, the court found Missouri's law in contravention of Illinois' criminal code, opposed to its public policy, opposed to the express prohibition of its statutory enactments and prejudicial to the interests of its people. The court stressed the evil character of the transactions involved.

The prohibition against indemnity agreements in construction contracts is not founded upon the theory that the concept of indemnity itself is contrary to Illinois policies, but rather on the theory that without such agreements other more important policy considerations might be enhanced. It cannot be said that indemnity agreements violate "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the commonweal." *Loucks v. Standard Oil Co.* (1918), 224 N.Y. 99, 111, 120 N.E. 198.

The public policy doctrine has long been criticized as an escape from thoughtful articulation of better, more relevant conflict-of-law rules. (Cavers, *A Critique of the Choice-of-Law Problem*, 47 Harv. L. Rev. 173 (1933); Goodrich, *Foreign Facts and Local Fancies*, 25 Va. L. Rev. 26 (1938); Paulsen and Sovern, *"Public Policy" in the Conflict of Laws*, 56 Colum. L. Rev. 969 (1956).) Paulsen and Sovern found that in the overwhelming number of cases which rejected foreign law on public policy grounds, the forum had some important connection with the case. Resort to the public policy doctrine in such cases, the commentators observed, was beguilingly easy and did not demand the hard thinking which the careful formulation of narrower, more realistic choice-of-law rules would require. Paulsen and Sovern concluded the principal vice of public policy concepts to be that they provide a substitute for analysis. Paulsen and Sovern, *"Public Policy" in the Conflict of Laws*, 56 Colum. L. Rev. 969, 1016 (1956).

For this court to decide the instant case on the basis of the public policy doctrine would be to arrive at an unjust result and further confuse the doctrine's proper application. Therefore, we turn to a consideration of more appropriate choice-of-law principles.

As already stated, the parties on appeal have argued only public

policy considerations. However, Caisson, in the trial court, argued that Wisconsin's substantive law should not apply to the third-party complaint in view of the "most significant contacts" test employed by our supreme court in the case of *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593. Implicit in the order of the circuit court, from which this appeal was taken, was that Wisconsin's substantive law did apply. Thus it is appropriate for this court to consider whether the substantive law of Wisconsin should have been applied in the first place under the appropriate choice-of-law principles. (See the concurring opinion in *Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 337, 239 N.E.2d 799, and *Kern v. Chicago & Eastern Illinois Railroad Co.* (1972), 6 Ill. App. 3d 247, 250, 285 N.E.2d 501, where the choice-of-law issue had not been briefed by the parties.)

### B.

In *Ingersoll v. Klein*, the Illinois Supreme Court rejected the traditional *lex loci delicti* conflict of laws rule in favor of a "most significant contacts" test for determining which State's law governed in a multistate tort case. This test is consistent with the choice-of-law principles formulated in the Restatement (Second) of Conflict of Laws (1971). In *Ingersoll*, the decedent drowned when the car in which he was riding broke through the ice on the Iowa side of the Mississippi River. The parties to the fatal automobile accident were all residents of Illinois. The decedent's administratrix filed a complaint in Illinois based on Iowa law. Since Iowa's only connection to the action was that by happenstance it was the alleged situs of the decedent's death, the court held Illinois law was applicable to determine if liability could attach to a party who was free of fault, merely by his being an owner of one of the vehicles.

Since *Ingersoll*, Illinois courts have not restricted the application of the "most significant contacts" test to torts. See *People v. Saiken* (1971), 49 Ill. 2d 504, 509, 275 N.E.2d 381, *cert. denied* (1972), 405 U.S. 1066, 31 L. Ed. 2d 796, 92 S. Ct. 1499, evidence seized in Indiana under a search warrant invalid there but admissible in Illinois was found admissible in an Illinois court either as a procedural matter or alternatively if viewed as a substantive matter, since the court found the crime, prosecution, defendant, and witnesses all had an Illinois basis and no policy interest of Indiana would have therefore been offended or undermined; *Kern v. Chicago & Eastern Illinois Railroad Co.* (1972), 6 Ill. App. 3d 247, 250, 285 N.E.2d 501, where this court found the law of the State of the defendant company's incorporation controlled the question as to whether a preferred shareholder's rights to dividends would be recognized; *Ford v. Newman* (1978), 64 Ill. App. 3d 528, 532-33, 381 N.E.2d 392, where Illinois law was applied in construing a trust instrument to determine the settlor's

intent even though the trust was executed in New York where the settlor was domiciled.

The instant case involves the applicability of Wisconsin's law to the contractual right of indemnity. The indemnity agreement between the parties began with the words, "To the extent permissible by applicable law * * *." Not only this indemnity provision but also the entire contract is silent as to whether Illinois or Wisconsin law should apply.

■ In the absence of an effective choice by the parties as to which law should govern the contract, Restatement (Second) of Conflict of Laws §188(1) (1971) provides that the rights of the parties with respect to an issue in contract are determined by the local law of the State which, with respect to that issue, has the most significant relationship to the transaction and parties. Contacts to be evaluated in connection with applying this principle are specified in section 188(2) and include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil, resident, place of incorporation, and business of the parties. Comment (e) to section 188(2) states that issues involving the validity of a contract will in most cases be determined according to the local law of the State of contracting, especially where it is the State where the parties conducted the negotiations and it is the State of the parties' common domicil.

■ The Restatement further provides that the contracts are to be evaluated in light of those underlying factors found in section 6 of the Restatement (Second) which, among other things, include the relevant policies of the forum and of other interested States and the relative interests of those States in the determination of the particular issue. The interest of a State in having its contract rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and upon the relation of the State to the transaction and the parties. See comment (c) to section 188(1) of the Restatement (Second) of Conflict of Laws.

■ The contract in the instant case was to be performed in Wisconsin and the injury occurred there, but all of the parties are domiciled in and residents of Illinois, from all indications the contract was negotiated and entered into in Illinois, and the enforcement of the contract is being sought in Illinois. The basic policy underlying the enactment of Illinois' indemnity statute is to encourage accident-prevention measures for the protection of the construction worker and the general public. Wisconsin has demonstrated a similar interest in its enforcement of the "Safe Place Statute" (*Wis. Stat.* §101.11 (1973)), which imposes a high standard of care on employers engaged in construction activities for the protection of employees and frequenters. Both States obviously enacted these statutes for the protection of their own residents. Illinois has the greater interest

in the outcome of this case because one of its residents whom the statute was designed to protect was injured, and the parties to this appeal, also residents of Illinois, were engaged in the activities the statute was designed to affect. To apply Illinois' law would not diminish or undermine any policy interest of Wisconsin. The fact that the injury occurred in Wisconsin is not of primary importance under the circumstances presented in the instant case. All other factors of consequence relate solely to Illinois. Applying Illinois law, the indemnity agreement cannot be enforced. Although we reach the same ultimate conclusion as the circuit court did, we do so on the basis that Illinois' substantive law should have been applied in determining the validity of the indemnity agreement. The judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.