**NATIONAL ASSOCIATION OF SPORT-
ING GOODS WHOLESALERS, INC.,**
Plaintiff-Appellee,

v.

**F.T.L. MARKETING CORPORATION,**
Defendant-Appellant.

No. 84–1254.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1984.

Decided Dec. 19, 1985.

Ronald S. Fishman, Fishman & Fishman, Ltd., Chicago, Ill., for defendant-appellant.

Michael T. Reid, Halfpenny, Hahn & Roche, Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and DOYLE, Senior District Judge.*

ESCHBACH, Circuit Judge.

The primary question presented in this appeal is whether a trade association may, without cause, prohibit an associate member from exhibiting at the association's trade shows. The district court found in favor of the trade association. For the reasons stated below, we will affirm.[1]

## I

The relevant facts are, for the most part, undisputed. The National Association of Sporting Goods Wholesalers, Inc., ("Association") is a business trade association that was incorporated in Missouri. Its office and sole employee (the executive director) are in Chicago. The primary purpose of the Association is to promote the interests of wholesalers in the sporting-goods industry. The Association's membership, for the purposes of this appeal, is divided into two categories: regular members and associate members. The 117 regular members are sporting-goods wholesalers. The 330 associate members consist of manufacturers, manufacturers' representatives, and importers. Unlike regular members, associate members can neither vote nor hold office. F.T.L. Marketing Corp. ("FTL") is an associate member of the Association.

The Association performs certain functions that primarily benefit the regular members. It, however, also publishes a newsletter and provides an automobile rental discount program. These activities benefit associate as well as regular members.[2] The Association also sponsors an

---

* The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, sitting by designation.

1. Judges Eschbach and Coffey wish to acknowledge the significant contribution made by Judge Doyle in a preliminary draft of this decision.

2. Although the record is not free of ambiguity, it would appear that the Association conducts sales surveys and distributes them in statistical form to both regular and associate members.

annual trade show, participation in which FTL contends is the primary benefit the organization provides to associate members. At the show, the exhibitors are the associate members.[3] Attendance is limited to the exhibiting associate members, regular members, manufacturers' representatives,[4] and invited guests. Retailers and the public are not allowed to attend. There has generally been 220 exhibitors at the shows, i.e., approximately two-thirds of the associate membership.

Until it was rejected as an exhibitor in 1983, FTL had exhibited at every show since 1978, the year it joined the Association as an associate member. FTL is a California corporation engaged in the manufacture of handguns and the distribution of several other products. From 1978 to 1981, the only item FTL manufactured was a 22-caliber automatic pistol, which was phased out of production in 1981. At the Association's 1981 trade show, FTL had a small number of the guns available, but did not actively solicit orders for them. It also marketed two other products, which proved to be unprofitable.

Following the phase out of its original pistol, FTL worked to develop an improved design. At the 1982 show, FTL displayed tool-shop prototypes of its new pistol. Although at that time it had no guns to sell, it exhibited at the show to let potential customers know it was an ongoing concern and to demonstrate the products it would have available in the future. By the time of the 1983 show, from which it was excluded, FTL had several thousand guns in production. FTL exhibits at no other trade shows, although a number of them exist.

To become an exhibitor at the Association's trade show, an associate member must apply on a form supplied by the Asso-

ciation. Rules pertaining to the show are set forth on the reverse side of the application. Rule Number 2 states that the Association "reserves the right to determine the eligibility of any company or product for inclusion in the Exhibit." Rule Number 6 provides in relevant part that the Association "reserves the right to reject, eject or prohibit any exhibit in whole or in part, or any exhibitor or his representatives, with or without giving cause." The Association's by-laws make no mention of the trade shows.

Following the 1982 show, FTL received a letter from the Association's executive director, Rebecca Maddy, stating that the Association was looking forward to FTL's participation in the 1983 show. In June 1983, however, counsel for the Association informed FTL by letter that the Association was exercising its right to reject FTL as an exhibitor at future shows. The stated reasons for the decision were that FTL does a substantial amount of retail business and that FTL representatives at the 1982 show spent the majority of their time trying to make wholesale purchases, an activity contrary to the interests of the Association's regular members (i.e., wholesalers).[5] In the letter, the Association also accused FTL of frequently leaving its booth unattended during the 1982 show. Prior to this letter, FTL had received no indication from the Association that FTL had done anything improper at the 1982 show.

FTL responded with a letter from its attorney denying the Association's allegations and inquiring as to what avenues of redress or appeal were available within the Association. The Association replied in a brief letter that it had determined there

---

3. It would appear that the associate members that exhibit are primarily manufacturers.

4. Although the record is not entirely clear on this point, it would appear that some of the manufacturers' representatives at the trade shows are associate members and others are not. The nonmembers may nonetheless attend the show after registering with the Association at the event.

5. The privilege of engaging in wholesale activities at the trade show was reserved for the regular members. FTL was not a regular member and presumably could not meet the requirements set forth in the Association's by-laws for becoming a regular member.

was no reason to change its decision to exclude FTL from future trade shows.

The Association initiated this litigation by filing a suit for a declaratory judgment that it had the legal authority to reject FTL as an exhibitor at the 1983 trade show. FTL counterclaimed and moved for injunctive relief requiring the Association to permit FTL to exhibit at the show. The district court held a hearing on FTL's motion for a preliminary injunction. FTL called two witnesses: Barry Kahn (president and half-owner of FTL) and Rebecca Maddy (executive director of the Association). At the close of the testimony, the Association moved for a directed finding that FTL had failed to carry its burden. The trial judge granted the Association's motion, and made findings of fact and conclusions of law from the bench. Although the court's oral findings were rather sparse, the key findings appear to have been that the primary purpose of the Association was to benefit its regular members (thus the associate members were only incidental beneficiaries), that the relationship between the Association and the exhibitors was contractual, and that the Association had unequivocally reserved the right to determine "arbitrarily" who the exhibitors would be. The district court concluded that associate members were accorded only the privilege of applying to be exhibitors, but not the right to exhibit at the trade shows. Because FTL had failed to show that there was a reasonable likelihood it would succeed on the merits, the district court denied FTL's motion for a preliminary injunction.

Both parties subsequently stipulated that at a trial on the merits FTL would offer the identical evidence presented at the first hearing. With this evidentiary record, the court reconfirmed its earlier findings of fact and conclusions of law and entered a final judgment for the Association on FTL's counterclaim. The Association stipulated to the dismissal of its declaratory-judgment claim.

## II

 The threshold issue in this diversity action is to determine which state's law applies.[6] In general, a federal district court sitting in diversity must apply the choice-of-law rules of the forum in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Before the district court and on appeal, the parties have apparently agreed that Illinois law governs this dispute. However, as the district court noted at the hearing on FTL's motion for an injunction, under Illinois choice-of-law rules, an Illinois court would apply the law of the state of incorporation (in this case Missouri).[7] *See Kern v. Chicago & Eastern Illinois R.R. Co.*, 6 Ill. App.3d 247, 250, 285 N.E.2d 501, 503 (1972).

 Although neither party cites law from the appropriate forum, a determination of the applicable state law is not required in this case, because "[w]here parties fail to raise a possible conflict of substantive laws ... the substantive law of the forum controls." *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 299 (7th Cir.

---

**6.** At oral argument, counsel for the Association consistently characterized FTL's claim as one implicating the due-process requirements of the Fourteenth Amendment. FTL's argument, however, as we understand it, is that state common law imposes a requirement of procedural fairness on private associations. There is, of course, no state action under these facts that would call into question the due-process clause of the Fourteenth Amendment. When state courts use the term "due process" in analyzing the contested actions of private associations, the phrase ordinarily refers to general notions of rudimentary procedural protections, not to the constitutional due-process doctrines. *See, e.g.,*

*Parsons College v. North Central Ass'n of Colleges & Secondary Schools,* 271 F.Supp. 65, 70 (N.D. Ill.1967). In this opinion, the term "due process" will refer to the procedural requirements imposed by state law on private associations.

**7.** In a later ruling from the bench, the trial judge gave no indication as to the substantive law he was applying. Because the parties' arguments were based on Illinois law, it would appear that, despite his earlier suggestion that Missouri law applied, the trial judge actually relied on Illinois law.

1985). Stated in another manner, unless the parties argue otherwise, it is assumed that the law of the forum and the laws of the applicable jurisdiction are in substance the same. *See Central Soya Co. v. Epstein Fisheries, Inc.,* 676 F.2d 939, 941 (7th Cir.1982). Similarly, unless the court's subject-matter jurisdiction is affected, parties may generally stipulate to the substantive law to be applied. *See Casio, Inc. v. S.M. & R., Inc.,* 755 F.2d 528, 531 (7th Cir.1985). Here the parties failed to raise the choice-of-law issue. We deem them, therefore, to have stipulated to the application of Illinois law.[8]

█ We agree with the district court that the relationship between the Association and FTL was a contractual one. The Association's by-laws say nothing about the trade shows. The exhibitor application form leaves no doubt that the Association reserved the right to refuse, without giving cause, an associate member's application. Thus, with reference to its contractual obligations, the Association acted within its rights in rejecting FTL's application. If FTL has a right to recovery, it must come from an extra-contractual source.

Under Illinois law, a court ordinarily will not review the actions of a voluntary association with respect to its members; when a court does intervene, the scope of its intervention is exceedingly narrow. *See Charles O. Finley & Co. v. Kuhn,* 569 F.2d 527, 542 (7th Cir.), *cert. denied,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978). The rule of nonintervention may not apply if: (1) the association has failed to afford members rudimentary "due process," or (2) the association has violated its own charter, bylaws, or some external law. *Charles O. Finley & Co.,* 569 F.2d at 544. In general, however, the judiciary "must refrain from interfering in the affairs of a private association absent a showing of *economic necessity.*" *Triester v. American Academy of Orthopaedic Surgeons,* 78 Ill.App.3d 746, 756, 33 Ill.Dec. 501, 508, 396 N.E.2d 1225, 1232 (1979) (emphasis added). If the association enjoys monopolistic power, the courts will ensure that such power is exercised according to principles of "procedural fairness." Thus, the judiciary will intervene when the association has an economic "stranglehold" on the relevant market. *Triester,* 78 Ill.App.3d at 752–57, 33 Ill.Dec. at 505–08, 396 N.E.2d at 1229–32; *Virgin v. American College of Surgeons,* 42 Ill. App.2d 352, 368–71, 192 N.E.2d 414, 422–24 (1963); *see also Duby v. American College of Surgeons,* 468 F.2d 364 (7thCir.1972); *cf. McCreery Angus Farms v. American Angus Association,* 379 F.Supp. 1008 (S.D. Ill.), *aff'd mem.,* 506 F.2d 1404 (7thCir.1974). Otherwise, the judiciary will rely on market forces to govern the actions of the association.

FTL argues that the situation presented by this case falls within the exceptions to the general rule and hence is one appropriate for judicial intervention. We disagree. FTL failed to show that the Association wielded substantial power in the sporting-goods industry, much less that membership in the Association was an economic necessity for the associate members. FTL's president, Barry Kahn, testified that, if FTL could not exhibit at the Association's trade shows, it would have to reassemble its sales force and arrange individual meetings with wholesalers at significant expense to FTL. Kahn conceded, however, that there were a number of other trade shows in the industry and that FTL had not previously participated in them. There are also many small manufacturers that do not even belong to the Association. FTL adduced no evidence showing that the Association's trade show was in any way unique or superior to the other shows. Furthermore, whatever importance the trade show might have had for regular members, the evidence shows it was not indispensable to the

---

**8.** We also note that, although Illinois law governing private associations appears to be more developed than that of Missouri, the scope of judicial intervention in the affairs of private associations appears to be similarly narrow in both Missouri and Illinois. *See, e.g., State ex rel. National Junior College Athletic Ass'n v. Luten,* 492 S.W.2d 404, 407 (Mo.Ct.App.1973); *State ex rel. O'Brien v. Petry,* 397 S.W.2d 1, 6 (Mo.Ct.App.1965).

business activities of associate members, as fully one-third of all associate members did not exhibit at the shows. At best, FTL showed that its inability to participate in the show could make selling its products somewhat more expensive. Thus, it was not clearly erroneous for the district court to conclude that FTL failed to show that the Association enjoyed anything approaching monopolistic power in the sporting-goods industry, or that exhibiting at the Association's trade shows was an economic necessity for FTL.

■■■ FTL seeks to avoid the rigors of the economic-necessity requirement by contending that its exclusion from the trade show was tantamount to expulsion from the Association. Expulsion could arguably call for a greater degree of judicial scrutiny than that employed in reviewing a claim that an associate member has been denied a benefit of membership, or that an applicant has been denied admission to an association. In *Treister,* for example, the Illinois Court of Appeals distinguished exclusion from expulsion and suggested that expulsion may require minimum "due process," whereas exclusion would not unless the prospective member could satisfy the stringent economic-necessity requirement. *Id.,* 78 Ill.App.3d at 754–55, 33 Ill.Dec. at 507, 396 N.E.2d at 1231. In any event, we disagree with FTL's assertions. As noted earlier, the fact that one-third of the associate members do not exhibit at the trade shows demonstrates that there is more to associate membership than participation in the trade shows. This fact alone persuades us that FTL was not subjected to a *de facto* expulsion from the Association.

In addition, this is not a situation in which an associate member was stripped of a previously existing right. When FTL became an associate member, it gained the

right to *apply* to become an exhibitor at the trade shows. The Association, however, expressly reserved the right to deny such an application without giving cause. Thus, FTL cannot claim that, as an associate member, it possessed a right to exhibit that the Association subsequently revoked.[9]

■■■ Our rejection of FTL's arguments in no way implies that we condone the Association's actions towards FTL. A member of an association is understandably disturbed when charges are leveled against it resulting in adverse decisions by the association, yet the member is denied any opportunity to challenge the allegations. At the hearing on its motion for injunctive relief, FTL's counsel insinuated that FTL's exclusion was instigated by a competitor who sat on the Association's board of directors. We note that associate members or prospective members are not without legal avenues to challenge behavior by associations that violate substantive laws of either federal or state governments. *Cf. Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* —— U.S. ——, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985) (Sherman Act); *Roberts v. United States Jaycees,* —— U.S. ——, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (state antidiscrimination law). However, the evidence adduced below, without more, does not provide FTL a basis for recovery. In the absence of allegations that any substantive law has been violated, the issue presented under these facts is at what point should the courts intervene in the internal affairs of private associations. We find that it would be a serious error to extend the scope of judicial review too far into the internal domain of private associations, and are corresponding-

---

9. In light of the above discussion, we need not reach the question whether an associate member could validly consent to arbitrary action in a situation in which rudimentary procedural fairness was required. Because the Association was under no legal compulsion to provide minimum "due process" to associate members, it was free to condition participation in the trade show upon the acceptance of its right to make unreviewable decisions as to the exhibitors and exhibits it would permit.

Having decided that FTL was not expelled, we also do not reach FTL's argument that the Association failed to follow the expulsion procedures set out in the Association's by-laws.

ly reluctant to burden trade associations [10] with procedural requirements if the aggrieved party has not made a showing of "economic necessity." FTL has failed to persuade us that intervention is appropriate in this situation.

### III

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

**10.** For example, if the Association were required to grant a hearing to every associate member denied an exhibition booth at the trade show, it conceivably could be obligated to conduct over one hundred hearings a year, and to defend any related court actions initiated by dissatisfied associate members.