**ROSE MARINE TRANSPORTATION INC., et al., Plaintiffs,**

v.

**KAISER ALUMINUM & CHEMICAL CORP., et al., Defendants.**

No. 89 C 5321.

United States District Court, N.D. Illinois, E.D.

Nov. 1, 1991.

Richard J. Cochran, Edwin H. Conger and Tamara A. Stewart, Tenney & Bentley, Chicago, Ill., for plaintiffs.

Roger J. McFadden, Thomas J. Dillon, McFadden & Dillon, Alan S. Gilbert, Lorie A. Chaiten, Sonnenschein, Nath & Rosenthal, F. Thomas Hecht, Steven A. Levy, Hopkins & Sutter, Chicago, Ill., for defendants.

### SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This belated supplement to this Court's September 10, 1990 memorandum opinion and order (the "Opinion," 758 F.Supp. 1218) has been triggered by one party's just having pointed out an inadvertent error in the Opinion—but an error that, as the discussion here will make plain, in no way affects the substantive decision reached in the Opinion. What has given rise to a renewed look at the Opinion is this: Rose Marine

Transportation, Inc. ("Rose Marine") is now seeking to file a Third Amended Complaint, and all three defendants have moved to strike Count II of that pleading. It was in the course of Rose Marine's memorandum responding to that effort that its new counsel have identified the error dealt with here.

■ In the course of this Court's original analysis of whether the "liquidated damages" clause of the contract (referred to in the Opinion as the "Agreement") that governed the relationship between Rose Marine and Calciner Industries, Inc. ("Calciner") was a true liquidated damages provision (and was hence enforceable) or was instead a penalty provision (and hence unenforceable), Opinion at 1222 n. 10 referred to this action as "a diversity-of-citizenship case in which Illinois law provide[s] the rules of decision." That was said in the course of drawing upon the discussion and decision by our Court of Appeals in *Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284 (7th Cir.1985). And the rest of the Opinion's substantive discussion of the subject (758 F.Supp. at 1222–24) looked to the *Lake River* discussion of Illinois law as well as to some added Illinois state court decisions.

Rose Marine's current counsel have accurately pointed out that the source of this Court's jurisdiction over the current action rests not upon diversity of citizenship (which is absent) but rather upon the historic admiralty or maritime jurisdiction. That being so, the normal referent for the substantive law to be applied in this action would be federal maritime law.

In this instance the Agreement between the parties (Art. XVIII(c), added by the October 14, 1985 Amendment to the Barge Supply and Service Agreement between Rose Marine and Calciner's predecessor, Kaiser Aluminum & Chemical Corporation) provides:

> This agreement shall be construed in accordance with and governed by the laws of the State of Illinois and Federal Maritime law.

This Court is unaware of any prohibition that would foreclose contracting parties from establishing their own choice-of-law provision, simply because the subject matter of their contract may come within the historical boundaries of admiralty or maritime law.[1] It is of course conceivable that Illinois law and federal maritime law might look in different directions in some respects, and at that point it might perhaps become necessary to construe the quoted language to determine which would control. But unless and until that were to happen, there is no reason to believe that the Opinion's discussion of Illinois law is not right on the money in this case.[2]

■ Indeed, it is important to point out that Rose Marine's Memorandum filed June 18, 1990 (together with supporting materials) in response to defendants' Fed. R.Civ.P. ("Rule") 56 motion—which occasioned this Court's consideration of the merits of Rose Marine's claimed entitlement to "liquidated damages" under the Agreement—said not a word about admiralty or maritime law as a suggested (let alone a required) basis for decision. Rose Marine's Mem. 2 n. 1 disclaimed entirely its original alternative claim that maritime law

---

1. It is not meant to suggest here that the normal rules as to contractual choice of law would not apply—principally the requirement that the jurisdiction designated by the parties to provide the rules of decision must bear some reasonable relationship to the subject matter of the agreement itself. In this instance Rose Marine was and is an Illinois-based corporation (its principal place of business is in Lemont), and both the original Agreement and the 1985 amendment between Rose Marine and Kaiser specified that they were executed at Lemont (where Rose Marine's officers actually signed the documents).

2. Judge Posner's musings (769 F.2d at 1288–89) on the public policy underlying "the hostility to penalty clauses ... in the common law" (*id.* at 1288) do not at all call for a different conclusion. To this Court's knowledge Judge Posner is correct in stating that Illinois "like every other state ... continues steadfastly to insist on the distinction between penalties and liquidated damages" (*id.* at 1289), and what Judge Posner also accurately refers to as "academic skepticism of the wisdom" of doing so (*id.*) does not teach that the federal judiciary has as yet moved in the opposite direction. But for the reason next discussed in the text, it is unnecessary to indulge further speculation on that subject.

afforded it lien rights that would authorize its seizure of the cargo of coke contained in its leased barges—instead it expressly *limited* its claimed source of entitlement to the so-called "liquidated damages" clause of the Agreement. And in that respect Rose Marine unambiguously rested its case on Illinois state law alone (Mem. 1–2 & n. 2):

> Plaintiff RMT contends that under the "Barge Supply and Service Agreement" (Agreement) as amended, it was entitled to retake its barges with the cargo as liquidated damages for default of the Agreement.
>
> This contention is supported by the meaning of the terms employed in the amended Agreement and by applying the conventional rules of contract construction available in the State of Illinois.[2]

[2] The amended Agreement provides that it "... shall be construed in accordance with and governed by the laws of the State of Illinois and federal maritime law." Amendment, ¶ 6(c), p. 4.

Not surprisingly, then, Rose Marine's entire Argument cited *exclusively* to Illinois appellate decisions (and to Seventh Circuit decisions applying Illinois law) and to the Illinois version of the UCC in urging the enforceability of the "liquidated damages" clause (Mem. 9–10, 11, 12 n. 29 and 13–14). Its adversaries did the same throughout *their* memoranda. Thus even apart from the parties' original contractual choice of law having identified Illinois law as one of two sources to be used in construing the Agreement, their litigating stance settled *solely* on Illinois law for that purpose. Our Court of Appeals consistently treats such conduct of the litigants as the equivalent of a stipulation that excuses any need for the court to look further into any arcane subtleties in the conflict of laws area (see, e.g., among the numerous Seventh Circuit decisions to that effect, such cases as *National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.I. Marketing Corp.*, 779 F.2d 1281, 1284–85 (7th Cir.

1985) (applying that principle) and *Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426–27 (7th Cir.1991) (explaining the considerations of tradition and judicial economy that underlie the principle)).[3]

 Accordingly this Court, though it does see fit to correct the inadvertent error in footnote 10 of the Opinion with alacrity, sees no need whatever to depart from the substantive discussion or the result reached in the Opinion. Where the so-called "liquidated damages" clause (1) expressly deals with amounts that are held simply to secure performance of the parties' contract, (2) is wholly aleatory in its operation and (3) if it were read as Rose Marine urged, would provide such an enormous windfall under the circumstances that obtained when Rose Marine terminated the Agreement, no conclusion is acceptable other than that it would operate as a sheer and unenforceable penalty.

**3.** Under the circumstances, Rose Marine's new lawyers are scarcely in a position to ask for a fresh look at the substantive result of the Opinion just because they have been perceptive enough (as their predecessors were not) to catch the mistaken parenthetical clause in Opinion at 1222 n. 10. Any one or more of several legal principles—contractual choice, waiver, estoppel or what have you—foreclose that prospect.